James Byron GREEN, Appellee,

v.

Margaret BARON; Joan Wright; Sherri Shea; Dr. R.T. Lara; and Gary Kirchhof, Appellants.

No. 88–1884.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1989.

Decided June 28, 1989.

John M. Parmeter, Des Moines, Iowa, for appellants.

Steven P. DeVolder, Des Moines, Iowa, for appellee.

Before FAGG and BEAM, Circuit Judges, and DUMBAULD,* Senior District Judge.

FAGG, Circuit Judge.

In this civil rights suit, James Byron Green sued various medical officials and staff members of the Iowa Security and Medical Facility located at Oakdale, Iowa (Oakdale). *See* 42 U.S.C. § 1983 (Supp. IV 1980). Green claimed the defendants violated his constitutional rights by depriving him of basic human necessities and by punishing him as a pretrial detainee. The jury found for the defendants. Green filed a motion for judgment notwithstanding the verdict (JNOV) and, in the alternative, a new trial.

The district court held a hearing and then granted the motion for JNOV. *See Green v. Baron,* 662 F.Supp. 1378, 1387, 1391 (S.D.Iowa), *appeal dismissed,* 831 F.2d 300 (8th Cir.1987) (table) (no final judgment in district court). In the alternative, the court granted the motion for new trial. *Id.* at 1390–91. After a separate trial on damages, the defendants appealed. We now affirm in part, reverse in part, and remand for a new trial.

When reviewing the district court's order granting JNOV, we must consider the evidence in the light most favorable to upholding the original jury verdict. *See*

*Washburn v. Kansas City Life Ins. Co.,* 831 F.2d 1404, 1407 (8th Cir.1987). The evidence shows police arrested Green after he brutally beat his mother with the butt of a shotgun. Green believed his mother was a Soviet spy or part of the Mafia. Before his criminal trial, the state trial court ordered that Green be transferred to Oakdale "for examination and treatment deemed necessary by staff physicians." The state trial court also ordered that Oakdale officials should release Green to the county sheriff "[a]t such time as the necessary treatment has been completed and [Green] can be returned * * * for trial." Green's attorney at that time concurred in the order.

On entering Oakdale, Green was argumentative, defiant, and basically ungovernable. When Green's behavior failed to improve through regular treatment programs, the defendants placed Green in the Special Treatment Program (STP). STP is a behavioral modification program based on a deprivation and reward framework. Patients are confined in barren isolation cells and earn necessities, comforts, and privileges through their proper behavior. STP can be successfully completed in two weeks, but in any event, lasts no longer than thirty days.

In an internal memorandum, Dr. Lara, a psychiatrist and defendant here, described Green's placement in STP.

All efforts to catch Mr. Green's attention or commitment have so far failed, including social isolation.

We therefore propose that [Green] be placed on a special treatment program whereby he earn[s] himself out of [STP] in two weeks. This goes as follows: On his first [twenty-four] hours, he is granted nothing. On day [one,] he gets his blanket at night; on day [two], he earns his mattress at night; on day [three,] he earns the privilege to work; [on] day [four,] he earns his breakfast; on day [five,] he earns the privilege of attending

---

* The Honorable EDWARD DUMBAULD, Senior District Judge for the Western District of Penn-sylvania, sitting by designation.

9 a.m. class; on day [six], he earns the privilege of attending group, but if that is not a group day, he can earn an hour[ ] free time; on day [seven,] he earns lunch[;] on day [eight,] he earns 1 p.m. class; on day [nine,] he earns supper; on day [ten], he earns an hour of free time; on day [eleven,] he earns evening class, but in the absence of that, he is given [one-half] hour on the unit; on day [twelve,] he is allowed to earn commissary; on day [thirteen], he is finally liberated. Any violations would set him back one day.

Exhibit P.

While in his isolation cell during STP, Green wore only his underwear. The defendants removed his other clothing. They, however, kept the cell heated. Further, the defendants frequently provided Green with clean underwear and gave Green an opportunity to shower. Although the cell contained no bedding, Green had the opportunity to earn his bedding and other items through appropriate behavior. The cell did have a combined sink and commode, and defendants provided toilet paper on request. If Green had not yet earned a meal, the defendants gave him a cold meal in his cell rather than allow him to eat a hot meal with the other patients.

Green did not progress through STP on schedule, but instead remained there from February 25, 1980, until March 24, 1980. He did not earn any bedding for several days and thus had to sleep on the tile floor in his cell. The defendants gave Green a blanket on March 1, but took it away the next morning. On March 4, Green received a blanket and mattress. After that point, the defendants deprived Green of bedding during the daytime. Although the defendants released Green on March 24, they returned him to STP a few days later because Green "exploded in violence and had to be physically subdued."

Again, Green failed to complete the two-week program on schedule. He remained in STP for over three weeks. During this second stay in STP, Green did not have any bedding for two or three days. The defendants again removed the bedding during the daytime. Green finished the program on April 23, 1980. During both periods in STP, Green spent some time out of his isolation cell. While outside his cell, Green was clothed and could participate in various activities.

The defendants released Green to authorities in June. They then believed Green was "sufficiently stable" to be tried on the pending criminal charges. The state trial court found Green not guilty by reason of insanity.

■■■ In granting Green's motion for JNOV, the federal district court determined it had improperly instructed the jury. The court had informed the jury that the defendants could deny Green basic human necessities if they did so "to preserve the security or safety of [Green], Oakdale, or other inmates." *Green*, 662 F.Supp. at 1382 n. 1. This instruction prejudiced Green in two ways: (1) the instruction failed to inform the jury that even if the defendants acted to preserve security and safety, they also could have intended to punish Green; and (2) based on the current record, the evidence did not support instructing the jury on a security or safety exception. Thus, the district court set aside the jury verdict for the defendants. To this extent, we agree.

The district court also entered judgment for Green. In doing so, the district court stated that any deprivation of basic human necessities violated Green's fourteenth amendment rights and that the defendants denied Green basic necessities during his stay in STP. *Id.* at 1382–84, 1387. The court further determined that if the defendants could properly deprive Green of basic necessities as part of his treatment, the current record failed to support that exception. *Id.* at 1385–87. Despite sharply divided expert testimony on whether STP was legitimate treatment, the court concluded STP constituted punishment, *id.* In the district court's view, the defendants violated Green's constitutional rights. On appeal, the defendants contend the district court committed error by granting JNOV, and we agree.

We recognize that generally governmental authorities cannot deny basic human necessities to persons in custody. *See Hamm v. DeKalb County,* 774 F.2d 1567, 1573 (11th Cir.1985), *cert. denied,* 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986); *Finney v. Arkansas Bd. of Correction,* 505 F.2d 194, 207 (8th Cir.1974); *cf. Wycoff v. Brewer,* 572 F.2d 1260, 1263 & n. 5 (8th Cir.1978). Those necessities include "light, heat, ventilation, sanitation, clothing[,] and a proper diet." *Finney,* 505 F.2d at 208; *see Hamm,* 774 F.2d at 1574 (food, living space, and medical care). Contrary to the district court's statement, *see Green,* 662 F.Supp. at 1384, however, this court has not adopted an unconditional prohibition against deprivations of necessities. Rather, we consider several factors in determining the constitutionality of deprivations, including the degree and duration of the deprivations, the reason for the deprivations, and the other surrounding circumstances. *See Johnson v. Williams,* 788 F.2d 1319, 1323 (8th Cir.1986); *see also Rust v. Grammer,* 858 F.2d 411, 414 (8th Cir.1988).

A minimal deprivation does not violate the Constitution. *See Bell v. Wolfish,* 441 U.S. 520, 539 n. 21, 99 S.Ct. 1861, 1874 n. 21, 60 L.Ed.2d 447 (1979). Additionally, other deprivations, such as clothing or bedding from a suicidal person who is in custody, do not violate the Constitution. *See, e.g., McMahon v. Beard,* 583 F.2d 172, 175 (5th Cir.1978); *see also Rust,* 858 F.2d at 414 (situation involving no laundry privileges, no prison yard privileges, restricted diet, and limited clothing and bedding, when done for limited time period in response to disruptive circumstances, does not rise to constitutional violation); *Finney v. Hutto,* 410 F.Supp. 251, 277–78 (E.D. Ark.1976) (constitutional to remove mattresses from inmates' cells during day for security reasons), *aff'd,* 548 F.2d 740 (8th Cir.1977) (relevant issue not raised on appeal), *aff'd,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). We turn to examine the relevant circumstances in the present case.

Because Green's criminal trial occurred after he left Oakdale, Green was a pretrial detainee while at Oakdale. Unlike convicted inmates, pretrial detainees cannot be punished. The due process clause forbids it. *See Bell,* 441 U.S. at 535 n. 16, 99 S.Ct. at 1872 n. 16; *Williams–El v. Johnson,* 872 F.2d 224, 229 (8th Cir.1989). If the defendants punished Green, they violated his due process rights.

The record does not show the defendants expressed an intent to punish Green. Thus, the issue of punishment turns on whether the deprivations were reasonably related to a legitimate governmental purpose. *Bell,* 441 U.S. at 538–39, 99 S.Ct. at 1873–74. If this relationship did not exist, the jury may infer an intent to punish. *Id.* at 539, 99 S.Ct. at 1874; *see Johnson–El v. Schoemehl,* 878 F.2d 1043, 1048 (8th Cir.1989). Similarly, if the deprivations were reasonably related to a legitimate purpose, but yet excessive in relation to that purpose, the jury may infer an intent to punish. *Bell* 441 U.S. at 538, 99 S.Ct. at 1873–74; *see Johnson–El,* 878 F.2d at 1048–49.

Here, the record reflects the state trial court committed Green to Oakdale for psychological treatment. The state court ordered the treatment to stabilize Green's behavior so that he could attend his criminal trial. Green's attorney confirmed the purpose of the commitment in oral argument before this court. Undoubtedly, committing Green for behavioral modification treatment so that he could personally participate in his criminal trial represents a legitimate governmental objective. *See Knecht v. Gillman,* 488 F.2d 1136, 1138 (8th Cir.1973) (treatment is a legitimate governmental goal). Green does not contend otherwise.

Because Green could be treated, but not punished, the deprivations through STP can be justified only if they were reasonably related to Green's legitimate treatment and not excessive. We recognize that the longer the deprivations occur through a treatment program, particularly without measurable success, the closer the deprivations come to the unwarranted imposition of punishment. *See Johnson–El,*

878 F.2d at 1048; *Johnson*, 788 F.2d at 1326 (Henley, Senior Circuit Judge, concurring). Further, a detainee has a right to a safe and healthy environment. *See Youngberg v. Romeo*, 457 U.S. 307, 315–16, 102 S.Ct. 2452, 2457–58, 73 L.Ed.2d 28 (1982) (referring to convicted prisoners and also persons involuntarily committed). Thus, a treatment program must provide the detainee with adequate food, clothing, shelter, personal hygiene and sanitation, and medical care. Not every deprivation, however, rises to the level of punishment under the due process clause. Although Green may have suffered discomfort through STP, his discomfort alone does not violate the Constitution. *See Bell*, 441 U.S. at 534, 538 n. 19, 99 S.Ct. at 1871, 1873–74 n. 19.

▄▄▄ Based on a review of the evidence in the light most favorable to the defendants, we cannot conclude that STP constituted punishment as a matter of law. We base this determination on several factors. First, the defendants did not place Green in STP until all their other treatment efforts failed. The defendants believed the STP deprivations were vital to the success of Green's behavioral modification program. Medical personnel structured STP, supervised its implementation, and constantly monitored Green while he was in this program. Additionally, STP did not endanger Green or appear excessive under *Bell*. Second, although Green wore only his underwear while in his cell, the area was heated to a comfortable level. When Green behaved properly, he had the opportunity to leave his cell and participate in different activities. The defendants then gave Green his clothes. Third, Green could obtain bedding after a very short period, and on at least one occasion, the defendants gave Green bedding when they believed he was cold. Fourth, Green had a sink and commode in his cell, and he received showers and meals. In sum, although Green contends otherwise, the defendants' evidence shows the deprivations were medically supervised, limited in degree, and restricted in duration.

Under the evidence viewed in the light most favorable to the defendants, a jury could find that Green's behavior modification program was reasonably related to a legitimate governmental objective and not excessive in relationship to that objective. We therefore remand for a new trial on the liability and damage issues.

▄▄▄ At the new trial, the district court should admit evidence presented of Green's condition before and after his participation in STP. The evidence is relevant to the issues. Additionally, the court should not instruct the jury that the State of Iowa will indemnify the defendants. The instruction is extremely prejudicial. *Cf. Griffin v. Hilke*, 804 F.2d 1052, 1056–58 (8th Cir.1986) (in section 1983 suit, plaintiff's statements that city government should pay for acts of its employees (police officers) were prejudicial and constituted reversible error), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3184, 96 L.Ed.2d 673 (1987).

Finally, we note that on appeal the defendants briefly raise their qualified immunity defense. The defendants asserted this defense in their answer to Green's complaint, but did not pursue the issue through a summary judgment motion in the district court. The district court considered and denied the defense when ruling on Green's motion for JNOV. Because we are remanding for a new trial, the district court, rather than this court, should first consider the qualified immunity defense if reasserted. The court should do so in light of this opinion.

Affirmed in part, reversed in part, and remanded for new trial.