782 F.Supp. 1324 (1992)
Gregory COSBY, et al., Plaintiffs,
v.
James PURKETT, et al., Defendants.
No. 91-1918C(5).
United States District Court, E.D. Missouri, E.D.
January 24, 1992.
*1325 *1326 Gregory D. Cosby, Keith Jackson, Diamond C. Slater and D.M. Perkin-Bey, pro se.
John F. Cooney, Evans & Dixon, St. Louis, Mo., for Purkett and Allen.

MEMORANDUM
LIMBAUGH, District Judge.
Pro se prisoner plaintiffs have filed a § 1983 action against defendants James Purkett, Superintendent at the Farmington Correctional Center (FCC) and Tim Allen, a functional unit manager (of Housing Unit 5) at the FCC. Plaintiffs allege that numerous constitutional violations existed with regard to their confinement during the months of May and June 1991 in the Administrative Segregation Unit (Housing Unit 5) at the FCC. Plaintiffs seek declaratory, injunctive, and monetary relief. The plaintiffs have filed a motion for summary judgment to which the defendants have replied.
*1327 Plaintiffs' original complaint consisted of a "laundry list" of eighteen allegations of unconstitutional conditions in Unit 5. Most of these allegations were found to be legally frivolous by Magistrate Judge Carol E. Jackson. This Court concurred with her findings. See, order dated November 18, 1991. The remaining allegations have been answered by the defendants and upon review of this matter, for the reasons set forth, the Court finds the remaining allegations to also be legally frivolous and shall be dismissed pursuant to 28 U.S.C. § 1915(d).
There are two issues that must be addressed preliminarily to addressing plaintiffs' summary judgment motion. Firstly, since plaintiffs are no longer confined to Unit 5, they are no longer subject to the alleged Eighth Amendment violations regarding their confinement. Therefore, they only retain standing to bring these claims for monetary damages. Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir.1985). Secondly, it should be noted that although the plaintiffs refer to their action as a "class action" it has never been classified as a class action suit and will not be treated as one. The Court will now turn its attention to the plaintiffs' motion for summary judgment.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Co-op. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.
Plaintiffs assert that the following conditions and/or deprivations violate their Eighth and Fourteenth Amendments rights: (1) plaintiffs were served cold meals which allegedly upset their stomachs; (2) meals were served without sanitary precautions; (3) plaintiffs not given personal hygiene products such as lotion, deodorant, and hair grease; (4) insufficient amount of toilet paper is issued to inmates confined to Unit 5; (5) number of showers restricted; (6) Unit 5 inmates given torn bed linen and not laundered often enough; (7) ventilation system inadequate; (8) insect and rat infestation of Unit 5; (9) not given proper shoes to wear when taken to medical unit; (10) denial of medical request forms and delays in receiving medical treatment; (11) denial of religious books; (12) *1328 radios confiscated; (13) denied access to law library; (14) due process denied because conduct violations heard by one hearing officer. Plaintiffs' allegations are supported by identical affidavits, virtually void of facts specific to each plaintiff.

Claims Against Defendant Purkett
All of the plaintiffs' claims against defendant Purkett, except for a claim concerning the confiscation of a radio, fail to allege any personal involvement or direct responsibility for a specific incident or deprivation which caused some type of injury to any one of the plaintiffs. Their claims fail to allege any personal loss due to defendant Purkett's actions. Furthermore, their claims fail to allege that Purkett had actual knowledge of the alleged constitutional violations and that he failed to take corrective measures. Suit is brought against Purkett for no other reason than he is the Superintendent of the FCC. Plaintiffs' allegations against defendant Purkett are insufficient to support a constitutional claim against him. Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir.1990); Wilson v. City of Little Rock, 801 F.2d 316, 322 (8th Cir.1986); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir.1985).
As for the claim regarding the confiscation of radio, defendant Purkett's directive dated May 23, 1991 (marked as Defendant's Exhibit D) clearly shows that radios were removed from cells in Unit 5 for security reasons. Furthermore, there is no viable due process claim because Missouri provides an adequate postdeprivation remedy. See, Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Orebaugh v. Caspari, 910 F.2d 526, 527 (8th Cir.1990); Maples v. United Savings and Loan Assoc., 686 S.W.2d 525, 527 (Mo.App. 1985).
As for defendant Allen, plaintiffs do have standing to bring their § 1983 claims against him. Defendant's Exhibit B  Standard Operating Procedures for the Administrative Segregation Unit clearly states that the "assigned Functional Unit Manager should be responsible for insuring that it operates as generally provided for in IS21-1.2 (Institutional Services Procedure) in its entirety." As the Functional Unit Manager for Unit 5, defendant Allen is charged with the direct responsibility for the operations of Unit 5.

Eighth Amendment Claims
Plaintiffs cite numerous practices/deprivations which they allege violate the Eighth Amendment. Plaintiffs' Eighth Amendment allegations are nothing more than disagreements with the prison regulations. By plaintiffs' own admissions, the prison regulations are generally followed; plaintiffs just want something more.
The Supreme Court recently held that all Eighth Amendment claims must be adjudged by the "deliberate indifference" standard previously set down by the Court in Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) for medical claims. Wilson v. Seiter, ___ U.S. ___, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The conditions of confinement must not involve the wanton and unnecessary infliction of pain, be grossly disappropriate to the severity of the crime warranting the punishment, nor involve conduct (that doesn't purport to be punishment at all) that demonstrates more than ordinary lack of due care for the prisoner's safety or interests. Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). In order to establish an Eighth Amendment challenge to confinement, a prisoner must establish the unecessary and wanton infliction of pain, mental or physical. Rodgers v. Thomas, 879 F.2d 380, 384 (8th Cir.1989); Cowans v. Wyrick, 862 F.2d 697 (8th Cir. 1988). Finally, a court in reviewing an Eighth Amendment challenge to the conditions of confinement must examine the totality of the circumstances. Rhodes, at 362-63, 101 S.Ct. at 2407-08.
When an Eighth Amendment challenge is directed at prison regulations, the validity of the regulation(s) which infringes on an inmate's constitutional right turns on whether the regulation is "reasonably related" to legitimate penological interests. *1329 Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); Divers v. Dept. of Corrections, 921 F.2d 191, 193 (8th Cir.1990), citing Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). The Court has reviewed the Standard Operating Procedures (SOPs) for Unit 5, the defendants' submitted affidavits of prison officials, and the plaintiffs' affidavits. The Court concludes that the plaintiffs' claims are merely general and conclusionary allegations. They have failed to demonstrate any specific injury directly caused by the alleged deprivations. They provide no evidence whatsoever that the alleged deprivations, either individually or in combination, caused them an identifiable physical harm or prevented their basic human necessities to be met. "A minimal deprivation does not violate the Constitution." Green v. Baron, 879 F.2d 305, 309 (8th Cir.1989), citing Bell v. Wolfish, 441 U.S. 520, 539 n. 21, 99 S.Ct. 1861, 1874 n. 21, 60 L.Ed.2d 447 (1979). Not every deprivation rises to the level of a constitutional violation, and the cited deprivations in this case certainly do not. The regulations in question are reasonably related to legitimate penological concerns and do not subject the plaintiffs to cruel and unusual punishment.
Plaintiffs allege that they were served cold food and that food was served without any sanitary precautions. Defendants' affidavits detail the manner of food preparation and service in Unit 5. It appears that all necessary sanitary precautions are routinely followed. Plaintiffs fail to state any specific incidents when food was served in a manner inconsistent with prison regulations. As for cold food, even if food was served cold from time to time, allegations of denial of hot meals do not state a cognizable claim, if prisoners are adequately fed. Boston v. Stanton, 450 F.Supp. 1049, 1055 (W.D.Mo.1978). Plaintiffs do not allege that their nutritional needs were not met.
Plaintiffs allege that certain personal hygiene products such as lotion, deodorant, and hair grease are not provided, that they are only given one toilet paper roll per week, that they are allowed only one shower every 72 hours, they are given torn bed linens which are not laundered often enough, and that the cells are infested with insects and rats. The SOPs and the affidavits state that prisoners are provided with basic personal hygiene items (soap, toothpaste, toothbrush, and shampoo) and that other items, such as hair grease can be bought at the institutional canteen. Plaintiffs do not allege that they were unable to buy the other items they think they need. One roll of toilet paper is provided weekly; additional rolls are available upon request. Plaintiffs fail to allege that their requests for additional toilet paper were ignored. Unit 5 inmates are allowed to shower once every 72 hours. Plaintiffs have failed to allege that they were injured in some way from this restriction upon the number of showers or cite the Court to a constitutional standard for the number of showers per week. Bed linen is sent out for laundering on designated laundry days. Defendants attest that torn sheets are the result of prisoners damaging their sheets for contraband purposes. Plaintiffs fail to allege how the failure to have crisp new clean sheets every day injured them. The Unit is sprayed for insects and rodents on a regular basis. Plaintiffs generally claim "infestation" but fail to cite any specific incidents or failure on the part of prison officials to respond to the alleged infestation. Although all the plaintiffs allege inadequate ventilation (pursuant to their identical affidavits), only plaintiff Cosby cites a specific incident relating to ventilation in Unit 5. Unit 5 is ventilated by a series of fans. By plaintiff Cosby's own admission, on the night of June 16, 1991 he and some other inmates decided that they wanted the fans turned off. They began to kick the doors of their cells, evidently hoping to make enough of a disturbance to get the guards' attention. They succeeded in doing so. The guards' response to the disturbance was to leave the fans on for some additional length of time. It is quite clear that the ventilation is quite adequate in Unit 5; plaintiffs simply want to be able to control it at their individual whims.
*1330 Plaintiffs contend that they are not able to practice their religion. They want specific hardback Korans. Prison regulations allow for softcover religious books such as Bibles and Korans; hardbound books are prohibited for security reasons. Plaintiffs fail to allege that they have been denied softcover religious books. The other contention is with regard to plaintiff Slater's conduct violation for placing a State-issued blanket on the floor of his cell for religious purposes. Despite warnings to remove the blanket from the floor, he insisted on keeping it on the floor. The Court does not view the prohibition against blankets on the floor to be a violation of plaintiff Slater's right of religion. He isn't being denied the opportunity to pray; he is simply being restricted from putting bed linen on the cell floor for health reasons.
Plaintiffs medical claims are somewhat puzzling. First they claim that they are denied medical care request forms. However, they then complain that their requests for medical care are often delayed and that they are not provided properly fitting shoes for their excursions to the medical unit. The prison regulations state that medical services request forms are available upon request. They must be filled out and turned in to the custody staff assigned to the first shift prior to 6:30 a.m. A supply of state-issued shoes are kept in the unit for use by inmates as needed. Plaintiffs make general allegations regarding delays in receiving treatment and being denied or given the wrong size shoes to wear when being taken to the medical unit. Plaintiffs fail to cite any specific instances when they were denied medical treatment or treatment was delayed after properly submitting the medical services request form. They fail to provide any medical records to substantiate the existence of a medical need that required treatment. As for the shoes, they fail to cite any specific instance when they were taken to the medical unit barefooted.

Access to the Courts
Plaintiffs allege that they are denied access to the courts because they are denied physical access to the prison law library and that paralegals do not bring legal materials to them. Prison regulations stipulate that Unit 5 inmates must submit a written request to the librarian stating his specific need and forward it through the in-house mail. The librarian is then responsible for insuring that the requested materials are brought to the inmate by the inmate law clerk on the law clerk's next scheduled visit to the unit. The restriction upon Unit 5 inmates' physical presence in the law library is for security reasons. Unit 5 inmates still have access to legal materials although they do not have access to them on a moment's notice. Under Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) prison inmates must have meaningful access to the courts and prison officials are affirmatively obligated to provide prisoners "with adequate law libraries or adequate assistance from persons trained in the law." Id., at 828, 97 S.Ct. at 1498. There is no constitutional right to unlimited access to a prison law library. Bounds, supra; Divers, at 194; Boston, at 1057.

Due Process Claims
Plaintiffs allege that their due process rights were violated in connection with disciplinary ruling regarding plaintiffs Slater and Jackson. Plaintiffs complain that due process was denied because the conduct violations were considered by only one person.
It is well-established that prisoners are entitled to the protections of the Due Process Clause and may not be deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Tyler v. Black, 811 F.2d 424, 427 (8th Cir.1987) (vacated and withdrawn in part on other grounds) 865 F.2d 181 (8th Cir.1989), cert. den., 490 U.S. 1027, 109 S.Ct. 1760, 104 L.Ed.2d 196 (1989). Prisoners' due process rights, however, are subject to restrictions due to the nature of prison surroundings. Wolff, 418 U.S. at 556, 94 S.Ct. at 2974; Tyler v. Black, 811 *1331 F.2d at 427. In Wolff, the Supreme Court set forth certain minimum due process requirements that must be afforded prisoners in disciplinary proceedings. These are 1) that written notice of the charges be provided to the inmate at least 24 hours in advance of the proceeding; 2) that the inmate be provided with a written statement by the factfinders discussing the evidence and reasons supporting the action; and 3) the inmate be afforded the opportunity, so far as safety and security allow, to call witnesses and present documentary evidence. Id., at 563-66, 94 S.Ct. at 2978-80; Tyler v. Black, 811 F.2d at 429. In recognizing that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply", the Court refused to hold that a prisoner has a right to either retained or appointed counsel in disciplinary proceedings. Id., at 556, 570, 94 S.Ct. at 2974, 2981. The Wolff Court also directed that an impartial decision-making body review the matter. Id., at 563-571, 94 S.Ct. at 2978-82. The SOPs for Unit 5 provide for investigations and determinations by either a disciplinary hearing officer or the Adjustment Board (depending upon the alleged conduct violation). In Wolff, the Supreme Court was concerned that the decision-making entity be impartial, not arbitrary or capricious. Id., at 570-71, 94 S.Ct. at 2981-82. The required size of the entity was not addressed. As long as the decision-making entity is objective, due process is protected. The plaintiffs fail to make any specific allegations that the single person responsible for reviewing their conduct violations was biased, partial, or in some way prejudiced against them. They fail to allege that the guilty findings were in error or that evidence was lacking to support the findings. Once again, they simply make general allegations that due process was denied them. Plaintiffs' challenge to the constitutionality of the regulations allowing for a single person to be the decision-making entity is without merit. See, Proffitt v. United States of America, 758 F.Supp. 342 (E.D.Va.1990).
Plaintiffs' complaint consists of nothing more than a listing of the dissatisfactions that plaintiffs have with life in administrative segregation. The Administrative Segregation Unit (Unit 5) is the maximum security housing unit at FCC. Inmates are temporarily placed or assigned to Unit 5 for an indeterminate short period of time for the "security and good order of the institution". Basically inmates confined to Unit 5 have displayed extreme behavioral problems and/or an inability to conform with the limitations of prison life. Unit 5 inmates have shown themselves to be a higher security risk than the rest of the prison population. The inherent nature of the Unit 5 inmate population necessitates stricter rules and regulations than those placed upon the general prison population. Plaintiffs believe that there is no reason to place additional restrictions upon them just because they were confined to Unit 5. This simply is not so. They were in Unit 5 for the very reason that they were unable to conform their behavior to the standard rules controlling the general prison population.
Prison life is no picnic. Prisons are intended to provide a controlled restrictive environment for inmates. "Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a `retraction justified by the considerations underlying our penal system.'" Wolff, 418 U.S. at 555, 94 S.Ct. at 2974 citing Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948). Prisons are not luxury hotels and prisoners are not hotel guests entitled to be waited upon. The plaintiffs may have suffered some discomforts due to their stay in Unit 5, but discomfort alone does not violate the Constitution. Green v. Baron, at 310. It is well-settled that pro se complaints must be construed liberally. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Plaintiffs' deprivations, while possibly upsetting to them, simply cannot be construed as rising to the level of constitutional violations.
In Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), the Court held that to dismiss an in forma *1332 pauperis complaint as frivolous under 28 U.S.C. § 1915(d) the district court must find that the complaint "lacks an arguable basis either in law or in fact". Id. Plaintiffs' complaint lacks an arguable basis in law or in fact because the allegations are lacking in factual support and fail to state deprivations which rise to the level of constitutional violations.