# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3480

_____

| | | |
|---|---|---|
| Ronald Butler, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Robert Fletcher, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: June 14, 2006
Filed: October 13, 2006 (Corrected 11/1/06)

_____

Before LOKEN, Chief Judge, BEAM and ARNOLD, Circuit Judges.

_____

LOKEN, Chief Judge.

Ronald Butler was detained at the Ramsey County Adult Detention Center (ADC) in St. Paul, Minnesota, pending criminal charges. After his conviction, Butler was transferred to a prison, where he tested positive for tuberculosis (TB). He filed this § 1983 damage action against Sheriff Robert Fletcher, alleging that Fletcher violated Butler's Substantive Due Process rights by failing to adopt and implement adequate safeguards protecting ADC inmates from TB infection. The district court[1]

_____

[1]The Honorable JOHN R. TUNHEIM, United States District Judge for the District of Minnesota, based upon the Report and Recommendation of the Honorable ARTHUR J. BOYLAN, United States Magistrate Judge for the District of Minnesota.

granted Fletcher's motion for summary judgment, concluding that a reasonable jury could not find that Fletcher acted with deliberate indifference to the serious health risk TB poses to inmates and detainees. Butler appeals, arguing that the court erred in applying the Eighth Amendment standard of deliberate indifference because Butler was a pretrial detainee, that in any event he presented sufficient evidence of deliberate indifference, and that the court committed procedural errors. Reviewing the grant of summary judgment *de novo*, we affirm.

## I.

Butler sued Sheriff Fletcher in his official capacity, so in essence, this is a suit against Ramsey County. "A county is liable [under § 1983] if an action or policy itself violated federal law, or if the action or policy was lawful on its face but led an employee to violate a plaintiff's rights and was taken with deliberate indifference as to its known or obvious consequences." Pietrafeso v. Lawrence County, 452 F.3d 978, 982 (8th Cir. 2006), quoting Board of County Comm'rs v. Brown, 520 U.S. 397, 407 (1997). Here, Butler alleges that he spent most of his time at ADC in two-person cells and in larger holding cells, where as many as twenty-six short-term detainees were held under deplorable sanitary conditions. He asserts that Fletcher's policy of placing short-term detainees in multi-person cells without an initial TB screening inadequately protects ADC detainees from the serious health risk of TB. Butler has neither alleged nor shown that any Ramsey County employee violated his rights. Therefore, the § 1983 issue is whether the County's policies for diagnosing and treating TB in its detention facilities violated Butler's constitutional rights.

It is well known that TB is a serious disease harmful to the lungs and other organs and that prisons are "high risk environments for tuberculosis infection." DeGidio v. Pung, 920 F.2d 525, 527 (8th Cir. 1990). Minnesota responded to this risk by enacting detailed statutory provisions that require mandatory tuberculosis screening of correctional facility inmates and employees. Minn. Stat. § 144.445.

To support his summary judgment motion, Sheriff Fletcher submitted affidavits describing the nature of the TB health risk at ADC, the policies he has implemented to avoid TB infections, and Butler's period of detention. The affidavit of Dr. Neal Holtan, a physician at the Ramsey County Public Health Department TB clinic, explained that infected persons have either active TB, which is contagious, or inactive TB, which is suppressed by the immune system and not contagious. TB is spread when a person with active TB coughs, sneezes, or exhales. More than a few days exposure is usually required to contract the disease. A person with active TB is no longer contagious once treatment begins. Thus, in a prison setting, an inmate diagnosed with active TB should be segregated from the general population for treatment until the inmate is no longer infectious. Dr. Holtan further explained that TB is diagnosed by conducting a Mantoux test, which identifies an infected individual 48-72 hours after the test is administered.[2] After a person is infected, the TB incubation period preceding a positive Mantoux test varies from two to twelve weeks. If the Mantoux test is positive, a chest x-ray or sputum test will reveal whether the person has active TB. See generally Center for Disease Control, Prevention and Control of Tuberculosis in Correctional and Detention Facilities: Recommendations from CDC, 55 Morbidity and Mortality Wkly. Rep. RR09, July 7, 2006, available at http://www.cdc.gov/mmrw/mmrw_rr.html.

Sheriff Fletcher's affidavit averred that he promulgated a detailed Policy and Procedures Manual that governs the custody and treatment of persons detained at a Sheriff's Department facility. The Manual provides that detainees must receive an initial medical screening within 24 hours of entering ADC. The booking deputy documents this screening on a Ramsey County Medical Screening Form. In addition, the Ramsey County Medical Director adopted a protocol for the diagnosis and

---

[2]A standard dose of Tuberculin is injected into a patient's forearm. The patient is considered positive for TB if the injection site develops a "palpable, raised, hardened area" measuring 10 mm or greater after 48 to 72 hours.

treatment of TB that prescribes a two-step screening process. First, the protocol provides that an "Intake Interview" shall be conducted:

> Inmates will be interviewed upon intake regarding whether they have any infectious diseases or symptoms suggestive of tuberculosis including cough, weight loss, fever, night sweats or loss of appetite. If the inmate reports or exhibits or acknowledges any symptoms suggestive of tuberculosis, Correctional Medical Staff will be notified as soon as possible and a chest x-ray will be taken within 72 hours.

Second, the protocol provides that a Mantoux test shall be administered within fourteen days, as § 144.445, subd. 1, requires. If the test is positive, a chest x-ray is taken. Whenever a chest x-ray suggests active TB, the inmate must be transferred to the hospital and treated.

The affidavit of Deputy Sheriff John St. Germain reported that Butler arrived at ADC on July 7, 2001, and transferred to a two-person cell in the general inmate population on July 10. On July 16, he was sent to a different Ramsey County detention facility, where he was given a Mantoux test on July 21, two weeks after his initial detention. The test result was negative. Butler returned to ADC on August 16, was again sent to a different facility on September 6, and returned to ADC on October 18. On November 1, after transferring to a correctional facility to begin his prison sentence, Butler tested positive for TB. Thus, although Butler was detained continuously from his negative Mantoux test on July 21 until he tested positive on November 1, he was housed at ADC only from August 16 to September 6 and from October 18 to 31.

The affidavit of Jane Berg, manager of the health care program provided by the Ramsey County Public Health Department to the Sheriff's Department, averred that no ADC inmate "is known to have had an active case of tuberculosis since 1999."

In response to the motion for summary judgment, Butler asserted that he was not initially screened at ADC, that many inmates were not detained at ADC long enough to receive a Mantoux test, and that conditions in the overcrowded holding cells were "abhorrent." He further alleged that the fact he contracted TB at ADC "is, quite frankly, indisputable." Butler also submitted an affidavit from former inmate Charles Burns averring that, while incarcerated at ADC from October 26, 2001, to February 13, 2002, Burns's cell mate related that he had a positive Mantoux test followed by a chest x-ray and was required to take antibiotics. Finally, Butler moved for the appointment of counsel and to compel additional discovery.

The magistrate judge issued a Report and Recommendation that Fletcher's motion for summary judgment be granted and Butler's procedural motion be denied. The magistrate judge reasoned that, because Fletcher promulgated policies for the diagnosis and treatment of TB that complied with § 144.445 and were formulated with input from the director of health care services, no reasonable fact-finder could find that Fletcher acted with deliberate indifference to the serious health risk that TB poses in a prison environment. When Butler failed to file timely objections to the Report and Recommendation, the district court granted summary judgment and dismissed the complaint with prejudice.

## II.

On appeal, relying on Bell v. Wolfish, 441 U.S. 520 (1979), Butler primarily argues that the district court erred in applying the Eighth Amendment standard of deliberate indifference because, as a pretrial detainee, Butler was protected by the Fourteenth Amendment's guarantee of substantive due process. In Bell, a conditions of confinement case, the Supreme Court explained that the Eighth Amendment protects a convicted inmate from "cruel and unusual" punishment, whereas the Due Process Clause restricts punishing a detainee prior to an adjudication of guilt. Therefore, "[i]n evaluating the constitutionality of conditions or restrictions of pretrial

-5-

detention . . . the proper inquiry is whether those conditions amount to punishment of the detainee." 441 U.S. at 535.

Prior to Bell, the Supreme Court held that deliberate indifference to a prisoner's serious medical needs "constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quotation omitted). After Bell noted the difference between Substantive Due Process and Eighth Amendment protections, we have recognized it is an open question but have repeatedly applied the deliberate indifference standard of Estelle to pretrial detainee claims that prison officials unconstitutionally ignored a serious medical need or failed to protect the detainee from a serious risk of harm. See Vaughn v. Green County, 438 F.3d 845, 850 (8th Cir. 2006); Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994) (collecting cases). Later Supreme Court decisions, while not resolving the issue, are consistent with this approach. See County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998) ("Since it may suffice for Eighth Amendment liability that prison officials were deliberately indifferent to the medical needs of their prisoners, it follows that such deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial."); DeShaney v. Winnebago County Dept. of Soc. Serv., 489 U.S. 189, 198-200 & n.5 (1989); Davidson v. Cannon, 474 U.S. 344, 358 (1986) (Blackmun, J., dissenting).

Despite this substantial precedent to the contrary, Butler argues that the deliberate indifference standard is improper because it does not afford pretrial detainees "significantly greater protection under the Fourteenth Amendment than prisoners enjoy under the Eighth Amendment." He urges us to apply what he calls the standard in Bell, determining whether alleged inadequacies in the procedures for diagnosing TB-infected inmates were "reasonably related to a legitimate governmental objective" and were not "excessive" in relation to that purpose. We reject this contention for two reasons.

-6-

First, under <u>Bell</u>, the Substantive Due Process inquiry is whether the detainee has been improperly punished. "The infliction of punishment is a deliberate act intended to chastise or deter." <u>Wilson v. Seiter</u>, 501 U.S. 294, 300 (1991) (quotations omitted). The standard urged by Butler applies, in the absence of a showing of an express intent to punish, "to determine whether a governmental act is punitive in nature." 441 U.S. at 537. By contrast, the governmental duty to protect at issue in this case is not based on a pretrial detainee's right to be free from punishment but is grounded in principles of safety and general well-being: "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." <u>DeShaney</u>, 489 U.S. at 200 (citations omitted). Pretrial detainees and convicted inmates, like all persons in custody, have the same right to these basic human needs. Thus, the same standard of care is appropriate.

Second, the standard urged by Butler -- whether conditions of pretrial detention are reasonably related to a legitimate governmental objective -- was applied in <u>Bell</u> to determine whether an improper *intent* to punish may be inferred. Butler urges that it be adopted in this case as a primary standard of care, without regard to Fletcher's intent to punish. Whether a condition is *reasonably* related to a legitimate government purpose is a negligence standard. Since <u>Bell</u>, the Supreme Court has emphatically (and repeatedly) declared that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." <u>Lewis</u>, 523 U.S. at 849. For these reasons, we hold that deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety.

Butler further argues that, even if deliberate indifference is the appropriate standard of care, summary judgment was improperly granted because the record

reveals a genuine issue of material fact whether Sheriff Fletcher knew ADC inmates faced a substantial risk of serious harm from TB and "disregard[ed] that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). Once again, Butler would have us fashion a negligence standard of liability by taking Supreme Court language out of context. Deliberate indifference has both an objective and a subjective component. The objective component requires proof that Butler was exposed to ADC inmates with active TB cases in a manner that created an unreasonable risk of serious harm to his health. See Helling v. McKinney, 509 U.S. 25, 35 (1993). He presented sufficient evidence that he contracted TB at ADC to survive summary judgment on this ground.

The subjective component of deliberate indifference requires proof that Fletcher "actually knew of and *recklessly disregarded*" this substantial risk of serious harm. Pietrafeso, 452 F.3d at 983 (emphasis added); see Farmer, 511 U.S. at 837. In this case, Butler challenged health care policies adopted and implemented by the County. Those policies did not disregard the risk of tuberculosis infection at ADC. To the contrary, as the district court noted, the policies specifically acknowledged the risk and promulgated detailed procedures for the diagnosis, segregation, and treatment of ADC inmates infected with active cases of TB. Butler asserted -- with virtually no supporting evidence -- that the above-described initial screening procedures were not implemented at ADC. Even if true, that would be evidence that certain ADC staff negligently, or even deliberately, failed to implement lawful policies. It is not evidence that the policies themselves were unconstitutional. Thus, the district court properly dismissed this official capacity claim because the undisputed evidence demonstrated that the County implemented policies addressing the serious health risk that TB poses to ADC detainees. Sheriff Fletcher did not act with deliberate indifference to this risk of harm, whether or not he might arguably have taken other "reasonable measures to abate it."

## III.

Butler's claims of procedural error require little discussion. When the district court granted Fletcher's motion for summary judgment, it denied Butler's motion to compel additional discovery responses, namely, his medical records, information about another detainee who allegedly tested positive for TB when transferred to prison the same day as Butler, and information about the medical history of one of Butler's cellmates. The motion further asked the court to appoint counsel and to extend the discovery deadline. We review the denial of this motion for abuse of discretion. See Phillips v. Jasper County Jail, 437 F.3d 791, 794-95 (8th Cir. 2006) (appointment of counsel); Life Plus Int'l v. Brown, 317 F.3d 799, 806-07 (8th Cir. 2003) (extending deadlines); Toghiyany v. AmeriGas Propane, Inc., 309 F.3d 1088, 1093 (8th Cir. 2002) (compelling discovery). Although we do not agree with the magistrate judge that the discovery requests were "largely duplicative," we do agree that they were "irrelevant" because neither the information sought -- nor the appointment of counsel -- could have overcome the undisputed evidence that Sheriff Fletcher and the Ramsey County Public Health Department promulgated policies and protocols that defeated Butler's official capacity claim as a matter of law. Thus, there was no abuse of discretion.

Finally, we reject the contention in Butler's pro se brief that his right to procedural due process was violated because he never received a copy of the magistrate judge's Report and Recommendation. He did not raise this issue in the district court. Moreover, we appointed counsel to represent Butler on appeal and have now reviewed *de novo* his challenge to the grant of summary judgment despite the absence of an objection to the magistrate judge's Report, a review our prior cases expressly permit. See Taylor v. Farrier, 910 F.2d 518, 520 (8th Cir. 1990).

The judgment of the district court is affirmed.

_____