# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-1046
_____

Fineola Ingram; Justin Simmons; Brian Boykin

*Plaintiffs - Appellants*

v.

Cole County; Sheriff Greg White; John Wheeler

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: September 22, 2016
Filed: January 17, 2017

_____

Before RILEY, Chief Judge, MURPHY and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

The laundry policy at the Cole County Detention Center leaves pretrial detainees naked, with only a bed sheet and a blanket for cover, every four nights for women and every two-to-three nights for men. During this time, guards and cellmates may see the detainees naked. Because this plausibly amounts to unconstitutional punishment, we reverse the district court's dismissal of the plaintiffs' complaint.

## I. *Background*

The plaintiffs were detainees at the Cole County Detention Center ("Jail"). Fineola Ingram was detained for 85 days beginning in November 2013. Justin Simmons was detained from April–September 2013 and again from April–July 2015. Brian Boykin was detained from March 2015 through at least July 2015, when this suit was filed.[1]

Jail policy prohibits detainees from wearing their own clothes. Instead, the jail gives each detainee one set of clothes: underwear, undershirt, pants, outershirt, socks, and shoes. Female detainees also get a bra. Female detainees' clothes are washed every four days; male detainees' clothes are washed every two-to-three days. While this set of clothes is being washed, detainees are not provided substitute garments. They are, however, given a bed sheet and a blanket. Jail staff usually does the laundry at night and returns the clothes the following morning. This takes about seven hours. The cells have windows that, per jail policy, may not be covered. So during this time, jail guards and cellmates may see the detainees unclothed if not concealed by their bedding. Sometimes male guards return clothes to female detainees and female guards return clothes to male detainees.

The plaintiffs sued in July 2015 as two putative classes: current detainees and former ones. They alleged that the laundry policy violates the Eighth and Fourteenth Amendments to the United States Constitution and corresponding provisions of the Missouri Constitution. They sought a temporary restraining order and a permanent injunction against Cole County, Sheriff Greg White, and Chief Deputy John Wheeler, and they sought damages against White and Wheeler. The district court denied the request for a restraining order and set the preliminary injunction for a hearing. The

---

[1]The plaintiffs' complaint uses "detainees" to mean "pretrial detainees and inmates." The district court, though, addressed the plaintiffs as "pretrial detainees" and therefore analyzed their claims under the Fourteenth Amendment rather than the Eighth Amendment. We follow the district court's path.

parties held depositions, and the defendants produced limited documents. The defendants moved to dismiss in late July 2015.

The court ultimately cancelled the injunction hearing and granted the dismissal motion. It held that the plaintiffs alleged "no more than minimal deprivation." Because the laundry was being done at night, the court observed, "[d]etainees are sleeping in the nude, not going about their activities during the waking part of the day in the nude. Furthermore, detainees are issued a sheet and a blanket . . . and may cover themselves with sheet and blanket if they wish." The court also noted that the plaintiffs have no general right not to be seen by guards of the opposite sex. It therefore concluded that "[t]he laundry policy at issue here creates no combination of factors that establish a constitutional violation." The court also identified cleanliness and hygiene as a legitimate purpose for the laundry policy. And even if the policy had no valid penological purpose, the court noted, that alone would not make it unconstitutional—the focus is on the totality of the circumstances. The court then granted qualified immunity to the individual defendants because the plaintiffs had not alleged an underlying constitutional violation.

The plaintiffs moved to set aside the judgment and for leave to file an amended complaint. The court denied that motion because the plaintiffs' proposed amended complaint did not add any allegations based on new evidence—that is, evidence unavailable before the court ruled on the motion to dismiss. The plaintiffs now appeal the dismissal and the denial of their motion to set aside the judgment. Because we reverse the district court's dismissal, we do not review its refusal to set aside the judgment in favor of amendment.

II. *Discussion*

We review the dismissal de novo. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). To survive a motion to dismiss, the plaintiffs must allege sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). They must show more than a sheer possibility of ultimate success, but they need not establish a probability of it. *Id.* A complaint therefore may proceed even if a savvy judge thinks ultimate success is unlikely. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

In evaluating the constitutionality of pretrial-detention conditions, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Due Process Clause prohibits *any* punishment before someone is adjudicated guilty. *Id.* We must first ask whether a given imposition is of "a *de minimis* level . . . with which the Constitution is not concerned." *Id.* at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). Then, if the imposition is of constitutional concern, the second question is whether it "amounts to 'punishment' in the constitutional sense." *Id.* at 537.

This second question—whether there is punishment in the *constitutional* sense—arises in pretrial detainee cases because detention always involves some loss of freedom and of life's ordinary comforts. *Id.* Yet "the Government concededly may detain [someone] to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment." *Id.* at 536–37. The relationship of the condition or restriction to nonpunitive government purposes is key. If a pretrial-detention condition or restriction "is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. But if it "is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.*

The defendants contend, relying on *Butler v. Fletcher*, 465 F.3d 340 (8th Cir. 2006), that *Bell* does not apply and that all conditions-of-confinement claims are tested for deliberate indifference. The deliberate-indifference standard examines

whether the state deprived the detainee of "the minimal civilized measure of life's necessities" and knowingly disregarded an excessive safety risk created by that deprivation. *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). *Butler* indeed purported to "hold that deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety." 465 F.3d at 345. We decline, however, to depart from *Bell*.

First, *Butler* was a medical-care case, so its statement about food, clothing, and shelter claims is dictum. *See John Morrell & Co. v. Local Union 304A of the United Food & Commercial Workers, AFL–CIO*, 913 F.2d 544, 550 (8th Cir. 1990) ("We need not follow dicta . . . .). Second, our cases often apply *Bell*'s punishment standard to prison-conditions claims. *See, e.g.*, *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (overflowing toilet). And third, the Supreme Court recently reaffirmed, albeit in "considered dict[um]," *McDonough v. Anoka County*, 799 F.3d 931, 942 (8th Cir. 2015), that *Bell* remains the standard for evaluating prison conditions for pretrial detainees. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). In *Kingsley*, the Court addressed whether an excessive-force plaintiff must prove only that the force used was objectively unreasonable, or must also prove that the officer *knew* that it was. *Id*. In holding that only objective unreasonableness is required, the Court relied on *Bell*, which it construed as applying an objective standard "to evaluate a variety of prison conditions, including a prison's practice of double-bunking." *Id*. *Bell*, then, remains the standard in conditions cases like this one.

Prisons must provide detainees with basic necessities, including clothing. *Green v. Baron*, 879 F.2d 305, 309 (8th Cir. 1989). But "[a] minimal deprivation does not violate the Constitution." *Id.* Temporary discomfort alone is not enough. *See id.* at 310. Is going without clothing every few nights, while having a blanket and a bed

sheet for cover, more than a de minimis imposition? We have no prior cases addressing the precise question. In our cases, the duration of the alleged deprivation varies, and there is no magic moment when the clock or calendar converts a condition of confinement into a constitutionally significant event. *Beaulieu v. Ludeman* held that 24 hours in unsanitary conditions is "too short a time to constitute a due process violation." 690 F.3d 1017, 1045 (8th Cir. 2012). Giving a detainee one roll of toilet paper per week, even though he must wait 30 minutes to wash himself in the shower after the roll runs out, does not violate the Constitution. *Stickley v. Byrd*, 703 F.3d 421, 424 (8th Cir. 2013). And four days in a cell with the stench of one's own feces "do[es] not rise to a level of constitutional significance." *Smith*, 87 F.3d at 268.

Clothing-deprivation cases usually turn on the reason for the deprivation. Twelve hours naked in solitary with no penological purpose is enough to "justify a factual finding that [the inmate] has indeed been deprived of his constitutional rights." *Porth v. Farrier*, 934 F.2d 154, 156 (8th Cir. 1991). Keeping a non-suicidal and non-dangerous prisoner in his underwear for five days "serve[s] no justifiable penological objective and [is therefore] a punitive measure." *Rodgers v. Thomas*, 879 F.2d 380, 384 (8th Cir. 1989). Fourteen days in solitary with only undershorts and a mattress, if unrelated to security, may also be punishment. *Maxwell v. Mason*, 668 F.2d 361, 363 (8th Cir. 1981).[2]

The reason for the deprivation may make its duration acceptable. Nine days in lockdown in boxer shorts is not punishment when the lack of clothing was an oversight and the prisoner apparently never requested more. *Rust v. Grammer*, 858 F.2d 411, 412, 414 (8th Cir. 1988). And even several weeks in unclothed

---

[2]Because *Porth* and *Rodgers* were Eighth Amendment cases, the punishment issue was not dispositive, as it is here. *See Rodgers*, 879 F.2d at 384 (condition not unconstitutional just because it serves no valid penological purpose).

psychological treatment is not excessive if reasonably related to a legitimate governmental objective. *Green*, 879 F.2d at 308, 310.

In this case, the detainees' outer garments and underwear are taken for laundering overnight at least twice—and sometimes three times—a week. During this time, they may be exposed to cellmates and guards when not covered by their bedding. They cannot block their cell windows. The defendants argue that these facts present "only a *de minimis* discomfort which is a necessary consequence of detention." We disagree.

We conclude that this practice constitutes more than a de minimis deprivation. Of course "[l]oss of freedom of choice and privacy are inherent incidents of [prison] confinement." *Bell*, 441 U.S. at 537. "And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Id*. Even four days in a cell with one's own feces, for example, may be de minimis despite the constitutional interest in sanitary conditions. *Smith*, 87 F.3d at 268. But the distinguishing fact here is frequency. Each deprivation is not exceedingly long, but the deprivations are repetitive and are expected to last the full duration of confinement. *See Green*, 879 F.2d at 309 (duration of deprivation matters). And while there is "no general right not to be seen naked by guards of the opposite sex," *Hill v. McKinley*, 311 F.3d 899, 909 (8th Cir. 2002), and a detainee's expectation of privacy is "of a diminished scope," *Bell*, 441 U.S. at 557, detainees are still entitled to clothing.

Because the laundry policy's imposition is more than de minimis, we ask whether it is reasonably related to a legitimate governmental purpose. *Id*. The defendants have not asserted one. The district court, reviewing the jail regulations cited by the plaintiffs, concluded that the policy promoted cleanliness and hygiene. A

policy of cleanliness, though, does not explain why the jail is unable to stock and wash enough clothes to avoid extended periods without clothing on a more or less permanent basis. Because the record reveals no legitimate objective behind this policy, it plausibly amounts to unconstitutional punishment.

The district court also noted that even if "the policy could serve no valid penological purpose, such conclusion alone would not make it unconstitutional." The district court is correct under the Eighth Amendment cases it cited. But this is not an Eighth Amendment case—it is, as framed by the district court, a pretrial detainee case under *Bell*. And under *Bell*, "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted on detainees *qua* detainees." 441 U.S. at 539.

Because the plaintiffs have alleged more than a de minimis imposition that is not reasonably related to a legitimate governmental purpose, the district court erred in dismissing their complaint. And because the district court based its qualified-immunity ruling on the perceived lack of a constitutional violation, this too was error.

## III. *Conclusion*

Accordingly, we reverse the dismissal and remand for further proceedings.

MURPHY, Circuit Judge, concurring in part and concurring in the judgment.

I concur in the court's well reasoned analysis of the pretrial detainees' claims but write separately to address the claims of the convicted prisoners. While the district

court addressed all plaintiffs as pretrial detainees, the complaint and briefs make clear that plaintiffs also include convicted prisoners.

Claims by convicted prisoners are analyzed under the Eighth Amendment. See Hott v. Hennepin Cty., 260 F.3d 901, 905 (8th Cir. 2001). To state an Eighth Amendment claim, "[a] prisoner must allege both that a deprivation of rights is 'objectively, sufficiently serious,' and that a state official is deliberately indifferent to inmate health or safety." Zink v. Lombardi, 783 F.3d 1089, 1107 (8th Cir. 2015) (en banc) (per curiam) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A deprivation is serious enough to satisfy the objective element only if it denies the prisoner "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

The "length of time the prisoner was subjected to the harsh confinement" is a "crucial factor" in determining whether a practice deprives a prisoner of life's necessities. Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989); see also Hutto v. Finney, 437 U.S. 678, 686–87 (1978). Deprivations of clothing may violate the Eighth Amendment, but not always. Rodgers v. Thomas, 879 F.2d 380, 384 (8th Cir. 1989).

Here, plaintiffs allege that jail officials have deprived them of clean clothing overnight between one and three times a week. They are sometimes left with only a bed sheet and blanket which are only intermittently washed. In the meantime they are not allowed to cover their cell windows and can be seen naked without their permission.

This claim is sufficient to satisfy the Eighth Amendment's objective component. The responsible jail officials would have known this practice caused humiliation to

inmates.  The prisoners have alleged sufficient facts to state a claim for relief against the responsible officials.

For these reasons I concur in the court's reversal of the dismissal of this action.

_____