858 F.2d 411
 John RUST, Donald M. Hurley, Jeffrey Benzel, C. Michael
Anderson, Appellants,
v.
Gary GRAMMER, Individually and as Warden of Nebraska State
Penitentiary; Harold W. Clarke, Individually and as
Associate Warden of Custody; Angelo Vinci, Individually and
as Adjustment Center Lieutenant, Appellees.
 No. 87-2023.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 14, 1988.
Decided Sept. 28, 1988.
Rehearing and Rehearing En Banc Denied Nov. 2, 1988.
 
 Kenneth C. Stephan, Lincoln, Neb., for appellants.
 Linda L. Willard, Asst. Atty. Gen., Lincoln, Neb., for appellees.
 Before ARNOLD and WOLLMAN, Circuit Judges, and TIMBERS,* Senior Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 John Rust, Donald M. Hurley, Jeffrey Benzel, and C. Michael Anderson appeal from a district court[1] judgment in favor of Nebraska State Penitentiary officials (prison officials) in this civil rights action under 42 U.S.C. Sec. 1983. We affirm.
 
 
 2
 On May 22, 1985, Warden Gary Grammer ordered a lockdown of the maximum security cells in the Nebraska State Penitentiary's adjustment center to regain control of a progressively disruptive situation. For several months, inmates had been setting fires and throwing food, urine, and feces into the gallery and onto the guards. All of the inmates except those in cells A-1 to A-5, who were housed in the adjustment center for nondisciplinary reasons, were subject to the lockdown.
 
 
 3
 Prison officials conducted a shakedown of the cells, in which all personal items were removed from the cells and inventoried. Three homemade knives were found. Each inmate was allowed to retain bedding and one prison jumpsuit. Benzel was not issued a jumpsuit and was clothed only in a pair of boxer shorts throughout the nine-day lockdown. The inmates were served two cold sandwiches three times a day and had only tap water from their cells to drink. These dietary restrictions allegedly caused the inmates to lose weight and suffer from stomach cramps, constipation, weakness, nausea, and chills. Additionally, exercise in the yard, showers, laundry service, and visiting privileges were cancelled.
 
 
 4
 Appellants challenged the application of these restrictions to them because they had not participated in the disturbances. They alleged that the lockdown violated their state-created liberty interests protected by the fourteenth amendment and constituted cruel and unusual punishment. The district court ruled that neither a due process nor an eighth amendment violation had occurred.
 
 I.
 
 5
 Although prison officials have broad administrative and discretionary authority over the institutions they manage, a liberty interest subject to the protection of the due process clause of the fourteenth amendment arises when a state enacts laws or promulgates regulations that contain language requiring that prison officials "must" or "shall" employ certain procedures and specifies that the particular sanction or benefit involved in a given case not be imposed or granted absent certain substantive predicates. See Hewitt v. Helms, 459 U.S. 460, 471-72, 103 S.Ct. 864, 871, 74 L.Ed.2d 615 (1983); Clark v. Brewer, 776 F.2d 226, 230 (8th Cir.1985). Appellants contend that a Nebraska statute and a prison regulation create a liberty interest to be free from the deprivations that occurred during the lockdown.
 
 
 6
 Neb.Rev.Stat. Sec. 83-4,114 provides in pertinent part:
 
 
 7
 There shall be no corporal punishment or disciplinary restrictions on diet. Disciplinary restrictions on clothing, bedding, mail, visitations, use of toilets, washbowls, or scheduled showers shall be imposed only for abuse of such privilege or facility. * * * This provision shall not apply to segregation or isolation of persons for purposes of institutional control.
 
 
 8
 Similarly, Nebraska Department of Correctional Services Rule 6(10)(b) provides in relevant part that "[r]estrictions on clothing, bedding, mail, visitations, use of toilets, wash bowls, or scheduled showers shall be imposed only for abuse of such privileges or facilities."
 
 
 9
 The district court ruled that the statute and the regulation quoted above were inapplicable because the restrictions imposed during the lockdown were not "disciplinary" in nature, but "were for the purpose of forcing immediate compliance with prison rules in order to maintain institutional safety and security." Mem. Op. at 6. The court reasoned that all discussion of discipline in the rules concerns infractions by specifically identified inmates who are charged with an offense and face possible punishment after notice and a hearing. Similarly, the statute addresses infractions of rules that result in the filing of a disciplinary report on an individual inmate's misbehavior. In contrast, the lockdown was imposed as a security measure to resolve a disturbance posing risks to the safety of inmates and prison staff. Because the district court determined that the rule and the statute were inapplicable, it did not address whether they created a liberty interest.
 
 
 10
 Appellants argue that the district court's narrow definition of the term "discipline" is contrary to accepted principles of statutory construction and to the evidence in this case. In support of their position that the lockdown was disciplinary in nature, appellants point out that the restrictions were not imposed on the inmates in the first five cells, who were housed in the adjustment center for nondisciplinary reasons. Appellants also contend that because none of them participated in any of the disturbances, the deprivations exceeded what was necessary for institutional control.
 
 
 11
 After reviewing the district court's well-reasoned analysis, we hold that it correctly determined that the lockdown was imposed as a security measure rather than as a disciplinary measure, and we agree that the statute and the rule that the inmates contend created a liberty interest are inapplicable. See Jones v. Mabry, 723 F.2d 590, 594 (8th Cir.1983), cert. denied, 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984). Prison officials imposed the lockdown to regain control of a disruptive situation that was threatening prison security and the well-being of the inmates, and not as a punitive measure directed at particular inmates.
 
 II.
 
 12
 Appellants next argue that the conditions of confinement during the lockdown constitute cruel and unusual punishment in violation of the eighth amendment.
 
 
 13
 A prison security measure undertaken to control a disturbance does not rise to the level of an eighth amendment violation unless officials acted "in bad faith and for no legitimate purpose." Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986). We accord prison officials great deference and will not substitute our judgment for theirs concerning the reasonableness of the alternative chosen to control a disruptive situation. We are satisfied that prison officials at the Nebraska State Penitentiary acted in good faith to restore order in the adjustment center and that each of the restrictions imposed had a penological justification.
 
 
 14
 Appellants first challenge the dietary restrictions that prison officials imposed during the lockdown in response to the prisoners' improper use of food. Prisoners had been throwing hot food at the guards and into the gallery, and had contaminated the food supply by throwing urine and fecal matter onto the food cart. Prison officials did not consult the prison dietician regarding the nutritional adequacy of the restricted diet, which consisted of water and two cold sandwiches three times a day.
 
 
 15
 Prisoners are guaranteed a reasonably adequate diet, Campbell v. Cauthron, 623 F.2d 503, 508 (8th Cir.1980), and a diet, such as this one, without fruits and vegetables might violate the eighth amendment if it were the regular prison diet. The district court correctly determined, however, that because the sandwich diet was imposed only for a short time, with no resultant long-term adverse effects, it was a constitutionally permissible response to the disruptive situation.
 
 
 16
 Second, appellants contend that the cancellation of yard privileges violates the eighth amendment. The prisoners normally received five hours of yard time per week. Because altercations between staff and prisoners arose when prisoners moved to and from the exercise yard, yard privileges were suspended from May 22-June 3, 1985.
 
 
 17
 In Leonard v. Norris, 797 F.2d 683, 685 (8th Cir.1986), we found no eighth amendment violation when a prisoner in punitive confinement was deprived of out-of-cell exercise for fifteen days. We deferred to prison officials in imposing restrictions to discourage disruptive behavior that makes an inmate unfit to circulate among the prison's general population. Likewise here, we reject appellants' claim that cancellation of yard privileges for several days was unconstitutional.
 
 
 18
 Appellants' third complaint focuses on clothing, bedding, and laundry restrictions. Prison officials permitted the inmates to retain a mattress, one set of sheets, one blanket, and one jumpsuit during the lockdown. Because some prisoners had been using their clothing to start fires in the gallery, all other clothes and bedding were removed from the cells to reduce the number of combustible items in the cells. Although laundry privileges were cancelled, clean sheets and clothes were provided on request.
 
 
 19
 Benzel was not issued a prison jumpsuit and was clad only in his underwear throughout the lockdown. Hurley's jumpsuit was so torn and tattered that he had to wrap it around his body like a diaper. Neither requested additional clothes, however. Appellants contend that the present case is indistinguishable from Maxwell v. Mason, 668 F.2d 361, 363-65 (8th Cir.1981), in which we held that prison officials violated an inmate's eighth amendment rights by confining him in isolation for fourteen days as a punitive measure with no clothing except a pair of undershorts and no bedding except a mattress. The district court correctly determined, however, that here the clothing restrictions met the important penological objectives of reducing the risk of fire, and that there was no evidence that Benzel would not have received a jumpsuit had he requested one. Unlike the facts in Maxwell, Benzel and Hurley could wrap themselves in sheets and blankets. More importantly, prison officials did not deprive Benzel of a jumpsuit to punish him or to cause him harm; rather, their failure to provide him a jumpsuit appears to have been an oversight.
 
 
 20
 We have examined the restrictions on visitation, phone calls, and personal items, and we agree with the district court that they were not imposed in bad faith.
 
 
 21
 The judgment is affirmed.
 
 
 
 *
 The HONORABLE WILLIAM H. TIMBERS, United States Senior Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska