**Richard CAMPBELL, Appellee,**

**Michael Ricardo Leviston,**

**Robert L. Garza, Marquis Washington, Juan Bradley, David Ditter, Larry Harrington, Dennis Mikulecky and Doug Schweitzer, Appellees,**

v.

**Gary GRAMMER, individually and in his official capacity as Warden of Nebraska State Penitentiary; Harold Clarke,**

---

individually and in his official capacity as Associate Warden; Adelbert Knight, individually and in his official capacity as correctional officer; Lt. Dean Naylor, individually and in his official capacity as correctional officer; Capt. Steve Phillips, individually and in his official capacity as correctional officer;

Angelo Vinci, individually and in his official capacity as correctional officer; Robert Linville, individually and in his official capacity as correctional officer; Frank Holland, individually and in his official capacity as correctional officer; Steve Simmons, individually and in his official capacity as correctional officer, Appellants,

Corp. Robert McPherson, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Roger Bauer, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Robert Bearden, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Lynn Wright, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Elaine Ringer, individually and in her official capacity as correctional officer at the Nebraska State Penitentiary; Sergeant Ronald Moody, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Corp. David Peters, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Corporal Piper, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Lt. Frederickson, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Daniel Danaher, Physician's Assistant, individually and in his official capacity as physician's assistant at Nebraska State Penitentiary; and Will Curtis, in-

dividually and in his official capacity as correctional officer at the Nebraska State Penitentiary.

Richard CAMPBELL, Appellant,

Michael Ricardo Leviston,

Robert L. Garza, Marquis Washington, Juan Bradley, David Ditter, Larry Harrington, Dennis Mikulecky and Doug Schweitzer, Appellants,

v.

Gary GRAMMER, individually and in his official capacity as Warden of Nebraska State Penitentiary; Harold Clarke, individually and in his official capacity as Associate Warden; Adelbert Knight, individually and in his official capacity as correctional officer; Lt. Dean Naylor, individually and in his official capacity as correctional officer; Capt. Steve Phillips, individually and in his official capacity as correctional officer;

Angelo Vinci, individually and in his official capacity as correctional officer; Robert Linville, individually and in his official capacity as correctional officer; Frank Holland, individually and in his official capacity as correctional officer; Steve Simmons, individually and in his official capacity as correctional officer, Appellees,

Corp. Robert McPherson, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Roger Bauer, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Robert Bearden, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Lynn Wright, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Elaine Ringer, individually and in her official capacity as correctional officer at the Nebraska State Penitentiary; Sergeant Ronald Moody, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Corp.

David Peters, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Corporal Piper, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Lt. Frederickson, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary; Daniel Danaher, Physician's Assistant, individually and in his official capacity as physician's assistant at Nebraska State Penitentiary; and Will Curtis, individually and in his official capacity as correctional officer at the Nebraska State Penitentiary.

Nos. 87–2680, 87–2681.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 19, 1988.
Decided Nov. 21, 1989.

Sharon M. Lindgren, Lincoln, Neb., for appellant.

Timothy L. O'Neill, Lincoln, Neb., for appellee.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON and BRIGHT, Senior Circuit Judges.

WOLLMAN, Circuit Judge.

Nebraska State Penitentiary employees Angelo Vinci, Robert Linville, Frank Holland, and Steve Simmons, appeal the district court's [1] finding that they violated the constitutional and statutory rights of eight inmates during a prison lockdown. They also argue that the award of attorneys' fees was excessive. The inmates cross-appeal the court's denial of several of their claims. We affirm in part and reverse in part.

## I. BACKGROUND

The adjustment center is the most secure facility at the Nebraska State Penitentiary. It houses those inmates who for various reasons cannot reside within the penitentiary's general population. Inmates assigned to the adjustment center include those being disciplined for misconduct and those awaiting completion of investigations of possible misconduct.

In October 1984 the inmates in the adjustment center began creating disturbances. Prison officials unsuccessfully attempted to quell the outbreak of misconduct by depriving the inmates of privileges and personal property and by talking to problem inmates. The disturbances continued, however, until by May of 1985 the inmates were setting fires, throwing human wastes on staff members and food service carts, and verbally and physically abusing the staff. The inmates also refused to return to their cells after shower and exercise periods, necessitating physical confrontations between staff and inmates.

Disciplining individual inmates was difficult because the layout of the adjustment center prevented the staff from determining which inmates were creating the disturbances and starting the fires. Given these riotous conditions, Gary Grammer, the warden of the penitentiary, and Harold Clarke, the associate warden for custody, believed that the safety of the inmates and of the staff was threatened. They therefore ordered the imposition of a lockdown beginning on May 22, 1985.

Grammer and Clarke cancelled regular prison meals. Inmates were to receive instead two sandwiches and milk three times a day until the lockdown ended. Lieutenant Angelo Vinci, who was responsible for supervising the adjustment center, failed to ensure that the diet ordered by Grammer and Clarke was provided. The inmates did receive the allotted sandwiches, but they *did not receive any milk.* Instead, they were allowed only tap water from their sinks which, at times, was turned on only during meals.

Discipline problems continued in the adjustment center on the evening of May 22 despite the lockdown, including repeated instances of arson. Inmates ignited combustible materials in their cells, such as clothing, bedding, and papers, and then threw these items out into the galleries. Officials used a high-powered fire hose to combat the fires. On that same evening, an official was informed that several inmates had made knives.

As a result of the recurring fires and the information about the knives, officials ordered a shakedown on May 23 to remove and inventory all personal and most combustible items. According to orders issued by Grammer and Clarke, each inmate was to be left an undergarment, a jumpsuit, a mattress, one set of sheets, and a blanket. All other items, including hygiene supplies, books, and other personal items, were to be

---

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

taken: These orders were followed, except that jumpsuits were not provided.

During the shakedown, several homemade knives were found, an inmate attempted to attack an officer with a sharpened toothbrush, various inmates spit upon and cursed the officers, and a fire occurred on one level of the adjustment center. Inmates continued to throw human wastes on the officials during the lockdown, requiring the officials to wear special protective clothing anytime they found it necessary to enter the galleries. After the lockdown ended on May 30, 1985, clothing, bedding, and personal property were gradually returned to the inmates.

Eight inmates subsequently brought suit.[2] Among other claims, all eight inmates contended that Clarke, Major Adelbert Knight, and Vinci violated the eighth and fourteenth amendments by not ensuring that the inmates had jumpsuits during the lockdown. All inmates also argued that restricting their diet during the lockdown violated the fourteenth amendment. Inmates Marquis Washington, Doug Schweitzer, and Robert Garza asserted that Simmons, Holland, and Linville violated their eighth amendment rights by intentionally spraying them with a high-powered fire hose while extinguishing fires. In addition, inmate Schweitzer contended that Lieutenant Max Fredrickson violated his eighth amendment rights by failing to ensure that he received proper medical treatment.

The district court found that Vinci had violated both the eighth and fourteenth amendments by not ensuring that the inmates had jumpsuits after the midpoint of the lockdown and that Simmons, Holland, and Linville had violated the eighth amendment by intentionally spraying three inmates with the fire hose. Lieutenant Vinci appeals the eighth amendment holding but not the fourteenth amendment holding regarding the clothing issue.[3] Simmons, Holland, and Linville appeal the intentional spraying claims.

The inmates cross-appeal, contending that the district court erred in finding that Clarke and Knight did not violate their constitutional rights by failing to ensure that the inmates were adequately clothed; that Fredrickson did not violate Schweitzer's eighth amendment rights by failing to ensure proper medical treatment; and that Grammer, Clarke, and Vinci did not violate the inmates' statutory and fourteenth amendment rights by restricting their diet.

## II. DISCUSSION

### A. Lack of Jumpsuits

■ As we stated in *Rust v. Grammer*, 858 F.2d 411 (8th Cir.1988), courts should ordinarily accord the actions of prison officials much deference. *Id.* at 414. Courts should be especially reluctant to interpose their hindsight when the challenged conduct occurred during a prison disturbance. As the Supreme Court has stated, that deference should extend "to prophylactic or preventive measures intended to reduce the incidence of * * * breaches of prison discipline" just as it does to "a prison security measure taken in response to an actual confrontation with riotous inmates." *Whitley v. Albers*, 475 U.S. 312, 322, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986).

■ Because prophylactic or preventive measures are not ordinarily intended as punishment, they "must involve more than ordinary lack of due care" to violate the eighth amendment. *Whitley*, 475 U.S. at 319, 106 S.Ct. at 1084. For example, when the conduct at issue involves "establishing conditions of confinement * * * or restoring official control over a tumultuous cellblock," only "obduracy and wantonness,

---

**2.** A separate suit was brought by four other inmates against Grammer, Clarke, and Vinci. *See Rust v. Grammer*, 858 F.2d 411 (8th Cir. 1988).

**3.** The inmates' fourteenth amendment claim was based upon Vinci's alleged violation of Neb. Rev.Stat. § 83–181, which imposes a duty upon Department of Corrections personnel to provide adequate food and clothing to inmates. Because the fourteenth amendment holding has not been challenged by appellants, and because we affirm the district court's judgment in the face of the cross-appeal, we deem no further discussion of this issue to be necessary.

not inadvertence or error in good faith" violate the eighth amendment. *Id.*

■ We conclude that Vinci's failure to ensure that the inmates had jumpsuits after the shakedown did not rise to the level of cruel and unusual punishment. Without some evidence indicating otherwise, Vinci's conduct cannot be characterized as obdurate or wanton. Rather, we view Vinci's failure to carry out Clarke and Grammer's order as a manifestation of inadvertence or error in good faith, which is not the type of conduct that constitutes an eighth amendment violation. *Id.* Vinci had been assigned to supervise the adjustment center for the first time the day of the lockdown. The former supervising lieutenant had resigned and sought a demotion to corporal due to the constant difficulties in the center. Under these circumstances, Vinci's failure to carry out his superiors' orders is more readily ascribed to misunderstanding, inexperience, oversight, inadvertence, and fecklessness than to the obduracy or wantonness that *Whitley* tells us characterizes the conduct that the eighth amendment proscribes. However regrettable, the deprivation of jumpsuits resulting from Vinci's dereliction in duty simply did not constitute an eighth amendment violation. *Rust v. Grammer,* 858 F.2d at 414. *See also Rodgers v. Thomas,* 879 F.2d 380, 384 (8th Cir.1989). *Cf. Johnson v. Williams,* 788 F.2d 1319 (8th Cir.1986).

## B. Spraying with Fire Hoses

■ When faced with the necessity of using force to quell a disturbance, prison officials are compelled to balance competing concerns of ensuring the safety of inmates and staff and of using the least confining or least dangerous measure to control those who threaten the safety of others. Often, these decisions are "necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Whitley,* 475 U.S. at 320, 106 S.Ct. at 1085.

■ Accordingly, the measure taken will not be held an eighth amendment violation if it was imposed "in a good faith effort to maintain or restore discipline" and not

"maliciously and sadistically for the very purpose of causing harm." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom., John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), *quoted in Whitley,* 475 U.S. at 320-21, 106 S.Ct. at 1084-85. In determining whether conduct was malicious and sadistic, courts must consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; and (3) the extent of injury inflicted * * *." *Wyatt v. Delaney,* 818 F.2d 21, 23 (8th Cir.1987). *See also Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085.

■ We agree with the district court that Simmons, Holland, and Linville violated the eighth amendment rights of inmates Washington, Schweitzer, and Garza by spraying them with a high-powered fire hose. The district court found that all three sprayings were intentional rather than accidental and that there was absolutely no justification for this application of force. As a result of the sprayings, Washington suffered back pain, which he testified lasted for months, Garza suffered temporarily blurred vision, and Schweitzer, who was struck on the ribs and thighs, experienced pain for about one day. The district court awarded these three plaintiffs, respectively, $750.00, $100.00, and $50.00.

Our review of the record satisfies us that the district court's findings on this issue are supported by the evidence. Although the injuries were not especially severe, they were sufficient to support the district court's finding of an eighth amendment violation. *Howard v. Adkison,* 887 F.2d 134 (8th Cir.1989); *Rodgers v. Thomas, supra; Cowans v. Wyrick,* 862 F.2d 697 (8th Cir.1988). Accordingly, we affirm the district court's judgment on this issue.

Having reviewed the inmates' cross-appeal, we find no basis for reversal, and we affirm on the basis of the district court's well-reasoned opinion concerning the issues raised by the cross-appeal.

Although we reverse in part the judgment against Vinci, the district court's judgment against Vinci based upon the fourteenth amendment, unappealed as it was, stands undisturbed. In view of that fact, we see no need to remand for a redetermination of attorneys' fees under *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Accordingly, the award of attorneys' fees is affirmed.

The judgment is affirmed in part and reversed in part, as outlined above.

BRIGHT, Senior Circuit Judge, concurring in part and dissenting in part.

I concur in the opinion but would affirm the eighth amendment violation against Vinci for reasons set forth by District Judge Warren K. Urbom.

Judge Urbom wrote:

The facts before me in this case on the matter of clothing differ from those presented in [*Rust v. Grammer*, 858 F.2d 411 (8th Cir.1988)]. In *Rust* all of the plaintiffs but one had jumpsuits; there was no evidence that the inmate without a jumpsuit would not have received one if he had requested it. None of the plaintiffs in the present case had a jumpsuit during the lockdown. Both their requests for clothing and the order from Clarke and Grammer were ignored. The evidence shows that Vinci was aware of the order that the inmates be issued jumpsuits, but failed to implement the order. The record contains no justification for that failure and that omission was an eighth amendment violation.

In my view, the district court's conclusion follows from its factual findings and the record supports those findings. Moreover, as Judge Urbom observed, this case differs significantly from *Rust*, where we affirmed Judge Urbom's decision against the prisoners/plaintiffs. Prison officials in *Rust* left only one inmate in his underwear and that prisoner had not requested a jumpsuit. In this case the guard not only received and ignored requests for clothing from several prisoners but also disregarded orders from superiors to provide the cloth-

ing. I agree with Judge Urbom that this constituted an eighth amendment violation.