983 F.2d 1072
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Marshall JACKSON, Plaintiff-Appellant,
v.
Thomas D. HANLON, James Hendrix, Omar Conrad, Sergeant
Butts, Officer Levy, Officer Caddell, Lieutenant
Minor, Major Lundy, Defendants-Appellees.
 No. 91-3766.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 14, 1992.*
Decided Dec. 16, 1992.
 
 Before BAUER, Chief Judge, CUMINGS, Circuit Judge, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Marshall Jackson, an inmate in the Maximum Security Unit (MSU) of the Indiana State Farm, charges several prison officials with violating his constitutional rights. 42 U.S.C. § 1983. The district court granted summary judgment for the defendants on all but the Eighth Amendment claim. After a trial the defendants prevailed on that claim as well. We affirm.
 
 I. BACKGROUND
 
 2
 On August 24, 1989, angry inmates attempted to flood the MSU by stopping up toilets. When guards shut off the water the prisoners changed tactics, setting fire to anything handy. Flammable materials were then removed from the cells, and the resourceful rioters began smashing windows and light fixtures and vandalizing their walls and beds. When even the K-9 squad could not restore order, guards deployed two canisters of tear gas in the MSU, one landing in front of Jackson's cell. Jackson was wearing nothing but undershorts at the time, and the gas burned his skin and eyes, requiring medical attention. Once things calmed down the inmates were removed from the unit, which was cleaned and aired out before they returned.
 
 
 3
 In response to the uprising, prison officials instituted a lockdown, including interim restrictions on all MSU prisoners. In addition to removing from the cells all personal property to be searched for contraband, the officials cut off all mail service (both personal and legal) and attorney calls. They contend that the mail and phone restrictions lasted only seven days and that personal property was returned as soon as it was searched. Jackson, however, maintains that the restrictions were in effect for thirty days.
 
 II. DISCUSSION
 
 4
 Jackson argues that the prison officials violated his constitutional rights in four ways. First, he contends that by removing the religious materials from his cell and interrupting his personal and religious mail, the officials ignored the First Amendment's free exercise and free speech clauses. Second, he asserts that the officials impeded his Sixth Amendment right of access to the courts by cutting off his legal correspondence and forbidding calls to his attorney. Third, he argues that the guards' use of tear gas on unclothed inmates transgressed the Eighth Amendment. Finally, he maintains that by retaining his property for an unduly prolonged period without a hearing, the defendants deprived him of due process.
 
 
 5
 As to the First Amendment claim, we begin by noting that the removal of Jackson's property and the mail restrictions were reactions to a prison riot. In such cases officials' decisions as to how to maintain order and protect staff and inmates are entitled to wide-ranging deference. Whitely v. Albers, 475 U.S. 312, 321 (1986); Bell v. Wolfish, 441 U.S. 520, 548 (1979). When their decisions impinge on inmates' constitutional rights, the question is whether the restrictions are reasonably related to legitimate penological interests or are exaggerated responses to those concerns. Turner v. Safley, 482 U.S. 78, 87 (1987).
 
 
 6
 Here the officials acted reasonably. Incoming mail had to be stopped temporarily because it was more likely to serve as fuel for fires than food for thought. Cf. Rust v. Grammer, 858 F.2d 411, 414 (8th Cir.1988) (permissible to confiscate inmates' clothes and bedding "to reduce the number of combustible items in the cells"). Similarly, the inmates' personal belongings had to be searched for contraband that might prove useful in a riot. Cf. Bell, 441 U.S. at 548-54 (restriction on incoming books upheld where such books were being used to smuggle contraband). These belongings were returned as soon as they were searched unless, like Jackson's, they contained some contraband (forged money orders) which had to be preserved for disciplinary proceedings.
 
 
 7
 The Sixth Amendment right-of-access claim centers on the decision to delay the prisoners' legal mail and forbid attorney calls after the uprising. Jackson argues that this violated his right of access to the courts, but does not mention what, if any, prejudice or injury he suffered from the restrictions. Unless the challenged restriction is one that "completely prevents the prisoner, or a person acting in the prisoner's behalf, from performing preliminary legal research," prejudice is a required element of a right-of-access claim. Jenkins v. Lane, 977 F.2d 266 (7th Cir.1992) (per curiam). By not alleging prejudice or claiming that officials prevented him from performing preliminary legal research (there is no suggestion that he could not get to the library during the lockdown), Jenkins has shown that he cannot make out a prima facie case on this claim. Summary judgment was therefore proper.
 
 
 8
 To succeed on his Eighth Amendment claim of cruel and unusual punishment, Jackson must show that the guards deployed the tear gas "maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995, 999 (1992); Whitley, 475 U.S. at 320-21. There is no violation if "force was applied in a good-faith effort to maintain or restore discipline." Hudson, 112 S.Ct. at 999; Whitely, 475 U.S. at 320. There is no question here that the guards acted in good faith for the purpose of restoring order. An emergency had been declared, the K-9 unit had already been used, and the guards sought and received permission before using the gas. Only after the gas set in did the disturbance abate. While Jackson was actually injured by the gas, the defendants did not act maliciously or sadistically, and summary judgment was appropriate.
 
 
 9
 Jackson's final claim is that the defendants denied him due process when they took and kept his property without a hearing. In emergency situations prison officials may, in order to restore the peace, confiscate inmate property, even though a hearing might otherwise be required. Hughes v. Rowe, 449 U.S. 5, 11 (1980); Caldwell v. Miller, 790 F.2d 589, 608-09 (7th Cir.1986). Jackson, however, cites La Batt v. Twomey, 513 F.2d 641 (7th Cir.1975), for the proposition that despite the initial justification for confiscating his property, he was entitled to a post-deprivation hearing when the defendants held it for an extended time. As La Batt explained,
 
 
 10
 [W]here a sufficiently extended deprivation of prisoners' rights occurs, notice of the cause of the deprivation, the reasons for its continuance, and an opportunity to respond must be provided within a reasonable period of time after the emergency decision has been effectuated and while its extraordinary effects continue.
 
 
 11
 Id. at 646. The court did not outline a specific standard for determining when deprivations of prisoners' rights are "sufficiently extended" to require notice and an opportunity to respond, but it did list factors to be considered. These are: "the severity of the action and the concomitant interference with normal prison life; the length of its imposition; and the reasonable availability of opportunity to provide meaningful individual notice." Id. at 647 n. 6. The court went on to hold that a nine-day, round-the-clock lockdown, following a prison altercation, was not so extreme or prolonged as to require officials to provide post-deprivation hearings to the affected prisoners. Id. at 646-47.
 
 
 12
 In this case it is difficult to tell how long the lockdown and challenged restrictions continued because each side tells a different story. Jackson contends that the mail, phone, and property deprivations lasted thirty days, while defendants assert that the mail and phone restrictions ended after seven days and that Jackson's personal property was returned after twenty-five days. Since we construe the record in the light most favorable to the nonmovant, we will assume that Jackson's version is correct.[1]
 
 
 13
 Taking the facts as Jackson alleges them to be we find no due process violation. That his religious materials and personal property were held for thirty days did not entitle him to a due process hearing. The defendants had to comb each prisoner's property for contraband, and Jackson's was returned (sans the money orders) as soon as it was searched. Considering the circumstances giving rise to the restrictions, the deprivation of property for almost a month was not an outrageous sanction, nor one that should have greatly interfered with normal prison life. Also, in light of the fact that property was being returned on an individual basis, giving each inmate a post-deprivation hearing would have been counterproductive, embogging the entire process. The defendants' acts were not an exaggerated response to the problem before them, and we will not second-guess the chosen solution. See Meriwether v. Faulkner, 821 F.2d 408, 417 (7th Cir.1987).
 
 
 14
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Plaintiff-Appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 Nevertheless it is significant that Jackson had agreed with the government's assertions until this appeal, when he first claimed that the restrictions were in effect for thirty days. In such circumstances it would be reasonable to hold Jackson to his original stance, since a party may not change its factual claims simply to avoid summary judgment. Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir.1988)