**Eddie RISDAL, Plaintiff,**

v.

**CIP Officer MARTIN; CIP Officer Swartz; Unknown CIP Officer; and John Sanders, Defendants.**

**No. 4–89–CV–30664.**

United States District Court, S.D. Iowa, C.D.

Jan. 7, 1993.

Jeffrey M. Lipman, Lipman Law Firm, Des Moines, IA, for plaintiff.

Asst. Atty. Gen. Suzie A. Berregaard Thomas, Grimes, IA, for defendants.

## MEMORANDUM OPINION AND ORDER

BENNETT, United States Magistrate Judge.

Plaintiff, Eddie Charles Risdal, is an inmate at the Iowa State Penitentiary at Fort Madison, Iowa ("ISP"). In this 42 U.S.C. § 1983 action, Risdal alleges that excessive physical force was used by correctional officials on September 13, 1989, when Risdal was forcibly required to shower. Risdal asserts that this physical force was unconstitutional.[1] Risdal seeks compensatory and punitive damages.

## I. INTRODUCTION.

Shortly after this incident occurred on September 13, 1989, Risdal filed a *pro se* complaint alleging that Officer Martin, Officer Swartz, and an unknown officer used excessive physical force in escorting him to a forced shower. Risdal also alleged that the unit manager, John Sanders, ordered the forced shower and, therefore, was ultimately responsible for the excessive physical force utilized by the three correctional officers.[2]

---

**1.** Although Risdal's *pro se* complaint does not specifically state whether his claim is based on the Eighth or Fourteenth Amendments, the court treats it as raising solely an Eighth Amendment claim. *See Whitley v. Albers,* 475 U.S. 312, 317, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986) (due process clause affords inmate no greater protection than does the Eighth Amendment).

**2.** At the conclusion of the trial, Risdal conceded that there were only two remaining defendants in this action: Randall Martin and John Sand-

ers. Other than authorizing the forced shower of Risdal, Defendant Sanders had no personal involvement in the actions of which Risdal complains. Because the court finds Defendant Martin did not violate any of Risdal's federal constitutional rights, the court need not reach the question of whether Defendant Sanders may be held liable under some theory of supervisory liability. *See e.g., City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). Of course, Defendant Sanders could not be held liable under the doctrine of *respondeat superior. Monell v. Department of*

Experienced counsel was subsequently appointed for Risdal. On December 4, 1991, the parties filed a consent to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). This case was tried to the court on September 23, 1992.

## II. FINDINGS OF FACT.

The following facts are not in dispute by the parties. Risdal has been at ISP since March of 1988. He was housed in cellhouse 220 in September of 1989. Defendant Martin, a former correctional officer at ISP, testified that cellhouse 220 houses the "most unruly and incorrigible" inmates in the Iowa penal system. These inmates are in lock-up 23 hours each day. Inmates in cellhouse 220 are generally violent offenders. Many cellhouse 220 inmates have committed serious institutional disciplinary violations triggering the imposition of substantial discipline. Each inmate in cellhouse 220 is showered individually.

Risdal testified his understanding of the shower policy in cellhouse 220 was that inmates could refuse showers for a reasonable period of time. Risdal also testified it was his belief he could shower up to three times per week and each shower would last approximately ten minutes.

In September, 1989, Defendant Martin was in charge of the correctional emergency response team ("CERT") at ISP. The CERT team was formed in May, 1982, and Martin joined the CERT team in January, 1985, as team leader. The CERT team is a highly trained and specialized crisis-situation team. CERT team officers wear special military-type uniforms. As CERT team leader, Martin was in charge of their training, assignment of duties, and daily activities. Part of the CERT team's responsibility included showering inmates in cellhouse 220 when there were staff shortages or when an inmate refused to shower.

It was the general policy of John Sanders, unit manager of cellhouse 220, to provide inmates who refused to shower with a notice entitled "Refusal to Shower/Cellhouse Cleanliness" which stated as follows:

> It has been brought to my attention that you have been consistently [sic] refusing to shower. In addition to the obvious health hazard you are creating for yourself, this also compromises the environment of other inmates and unit staff. You have the right to shower three times per week and you are encouraged to exercise this right. You may also clean your cell at least twice a week. Your disregard for your own hygeine [sic] however, is infringing upon the rights of others and this will not be permitted. You are ordered to shower and clean your cell a minimum of once per week. It is hoped that you will comply with this order voluntarily. If not, you will be forcibly showered. You are required to clean your own cell. The staff assigned to this unit have too many other duties than to be bogged down with providing a personal "maid service". If necessary, your cell will be cleaned with a fire hose.
>
> Any comments or questions concerning this directive should be referred to me.[3]

Sanders' usual practice was to provide this notice to an inmate at least two days prior to ordering a forced shower for the inmate. It was uncontested that Risdal received some kind of notice from John Sanders. The court finds that the notice Risdal received complied with John Sanders' general policy.

The court finds the following facts, which, to varying degrees, are disputed by the parties.

On the morning of September 13, 1989, Officers Martin and Schneider approached Risdal's cell and informed him he had to take a shower. Risdal did not respond whether he would voluntarily take a shower. Risdal was strip searched and escorted

---

*Social Services,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978); *Ouzts v. Cummins,* 825 F.2d 1276, 1277 (8th Cir.1987) (citing *Cotton v. Hutto,* 577 F.2d 453, 455 (8th Cir.1978)).

**3.** A copy of this notice was introduced into evidence as Defendant's Exhibit J. However, the Defendants did not introduce the actual notice which they claim Risdal received prior to his forced shower on September 13, 1989.

to the shower cell by Officers Martin and Schneider. Risdal was handcuffed while transported to the shower cell and the officers placed their hands on Risdal's arms; however, Risdal walked voluntarily and no force was required. Once in the shower cell, Risdal was required to place his hands through an opening in the cell door. This opening was a "food slot" prior to the cell being converted to a showering cell. The correctional officers unlocked Risdal's handcuffs so he could shower. At this point Risdal claims Defendant Martin pulled his hands through the food slot and pulled his hair causing his head to hit the bars and bleed. The court rejects Risdal's version of these events based upon the testimony of Officers Martin and Schneider and the total lack of any corroborating evidence.[4]

After Risdal finished the shower, he was escorted back to his cell by Martin and Schneider. While being transported back to his cell, Risdal claims Martin and Schneider taunted him about the "last time he was tested for AIDS." Risdal also claims Martin and Schneider "shoved him around." Defendants Martin and Schneider denied both the verbal taunting and shoving of Risdal. While it is an extremely close question, the court concludes Risdal failed to carry his burden of proof concerning the verbal taunting and shoving incidents.

Even if the court had concluded Risdal had proved the verbal taunting and shoving by Defendants Martin and Schneider, that would not entitle Risdal to relief. For the reasons set forth below, the court concludes that such conduct, while unfortunate, and potentially illegal under state law,[5] does not violate the Eighth Amend-

ment's prohibition on cruel and unusual punishment.

## III. CONCLUSIONS OF LAW.

### A. An Overview of the Eighth Amendment.

The Eighth Amendment prohibition of "cruel and unusual punishments" has its origin in English law.[6] *Furman v. Georgia*, 408 U.S. 238, 316, 92 S.Ct. 2726, 2766, 33 L.Ed.2d 346 (1972) (Marshall, J., concurring). Prior to the adoption of the English Bill of Rights in 1689, a prohibition against "excessive punishments in any form" had developed in English common law over the centuries. *See* Anthony F. Granucci, *"Nor Cruel and Unusual Punishments Inflicted:" The Original Meaning*, 57 Cal.L.Rev. 839, 844–47 (1969). The language used in the Eighth Amendment first appeared in the 1689 English Bill of Rights, which was drafted by Parliament and ratified at the accession of the new monarchs, William and Mary. *Gregg v. Georgia*, 428 U.S. 153, 169, 96 S.Ct. 2909, 2923, 49 L.Ed.2d 859 (1976) (citing Granucci, *supra*, at 852).[7] In 1776, Virginia adopted verbatim this language from the English Bill of Rights in its own Declaration of Rights. *Furman*, 408 U.S. at 319, 92 S.Ct. at 2767 (Marshall, J., concurring). Eight other states soon adopted this clause, and in 1791 it became the Eighth Amendment to the United States Constitution. Granucci, *supra*, at 840.

■ In an analysis of the original meaning of the Eighth Amendment's "cruel and unusual" punishment clause, the Supreme Court recognized that:

---

**4.** There is no corroborating evidence of any kind that Risdal suffered any injuries. Risdal neither complained to the institutional medical authorities nor offered medical evidence of injuries. There is no evidence from other inmates substantiating Risdal's alleged injury.

**5.** In *Stenzel v. Ellis*, 916 F.2d 423, 427 (8th Cir.1990), the court held regarding similar claims by an inmate that "[a]lthough the conduct Stenzel alleges may have given rise to a state law cause of action for battery, it does not rise to the level of a constitutional violation."

**6.** The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted."* (emphasis added).

**7.** "The tenth declaratory clause of the bill reads: 'That excessive bail ought not to be required, nor excessive fines imposed; nor cruel and unusual punishments inflicted.'" Granucci, *supra*, at 852–53 (citation omitted).

[t]he English version appears to have been directed against punishments unauthorized by statute and beyond the jurisdiction of the sentencing court, as well as those disproportionate to the offense involved.... The American draftsmen ... were primarily concerned, however, with proscribing 'tortures' and other 'barbarous' methods of punishment.

*Gregg*, 428 U.S. at 169–70, 96 S.Ct. at 2923 (joint opinion) (citing Granucci, *supra*, at 842, 860); *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). The Eighth Amendment was adopted with the intention of placing limits on the government and the potential abuse of its power against persons convicted of crimes. *Browning–Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 266, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989).

The earliest Eighth Amendment claims before the Supreme Court "focused on particular methods of execution to determine whether they were too cruel to pass constitutional muster." *Gregg*, 428 U.S. at 170, 96 S.Ct. at 2923 (citing *Wilkerson v. Utah*, 99 U.S. 130, 136, 25 L.Ed. 345 (1879); *In re Kemmler*, 136 U.S. 436, 447, 10 S.Ct. 930, 933–34, 34 L.Ed. 519 (1890)). In these early cases, the Court restricted its Eighth Amendment inquiry to whether the methods of execution were torturous or barbarous within the Amendment's original meaning. *Estelle*, 429 U.S. at 102, 97 S.Ct. at 290. The Court, however, "has not confined the prohibition embodied in the Eighth Amendment to 'barbarous' methods that were generally outlawed in the 18th century. Instead, the Amendment has been interpreted in a flexible and dynamic manner." *Gregg*, 428 U.S. at 171, 96 S.Ct. at 2924. In *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), the Supreme Court moved away from a historical interpretation of the Eighth Amendment and stated: "Time works changes, [and] brings into existence new conditions and purposes. Therefore a principle to be vital must be capable of wider application than the mischief which gave it birth. This is particularly true of constitutions." *Weems*, 217 U.S. at 373, 30 S.Ct. at 551. The Court went on to point out that

the Eighth Amendment's cruel and unusual punishments clause has an "expansive and vital character," which "is not fastened to the obsolete but may acquire meaning as public opinion becomes enlightened by human justice." *Id.* at 377, 378, 30 S.Ct. at 553, 553; *see also Trop v. Dulles*, 356 U.S. 86, 100–01, 78 S.Ct. 590, 597–98, 2 L.Ed.2d 630 (1958) ("[t]he Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society"); *Gregg*, 428 U.S. at 172–73, 96 S.Ct. at 2924–25 ("the Eighth Amendment has not been regarded as a static concept"); *Estelle*, 429 U.S. at 102–03, 97 S.Ct. at 290 ("the Amendment proscribes more than physically barbarous punishments"); *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968) ("broad and idealistic concepts of dignity, civilized standards, humanity, and decency" help define the Eighth Amendment proscriptions).

■ "[P]ublic perceptions of standards of decency with respect to criminal sanctions are not conclusive." *Gregg*, 428 U.S. at 173, 96 S.Ct. at 2925. A penalty must also comply with the "dignity of man." *Id.* (quoting *Trop v. Dulles*, 356 U.S. at 100, 78 S.Ct. at 597–98). The punishment "must not involve the unnecessary and wanton infliction of pain [or] ... be grossly out of proportion to the severity of the crime." *Id.* (citations omitted). "Until recent years, [however,] the Cruel and Unusual Punishment Clause was not deemed to apply at all to deprivations that were not inflicted as part of the sentence for a crime." *Hudson v. McMillian*, —— U.S. ——, ——, 112 S.Ct. 995, 1005, 117 L.Ed.2d 156 (1992) (Thomas, J., dissenting). The Eighth Amendment was not considered to protect inmates from harsh treatment by prison officials. *Id.* "It was not until 1976—185 years after the Eighth Amendment was adopted—that [the] Court first applied it to a prisoner's complaint about a deprivation suffered in prison." *Id.* at ——, 112 S.Ct. at 1006. In *Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976), the Supreme Court extended the application of the cruel and unusual punishment clause to inmate deprivations which were not part of

an inmate's sentence. *Hudson,* — U.S. at —, 112 S.Ct. at 1001; *Wilson v. Seiter,* — U.S. —, —, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991).

## B. Legal Analysis.

█ Risdal brings this § 1983 action alleging excessive physical force was used by correctional officers when he was forcibly required to shower and when he was transported back to his cell, thereby subjecting him to "cruel and unusual punishment in violation of the Eighth Amendment, made applicable to the States by the Fourteenth." *Estelle,* 429 U.S. at 101, 97 S.Ct. at 289. In *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), the Supreme Court defined cruel and unusual punishment in the context of prison security. "After incarceration, only the 'unnecessary and wanton infliction of pain' ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084 (quoting *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977)).

What constitutes an "unnecessary and wanton infliction of pain ... varies according to the nature of the alleged constitutional violation." *Hudson,* — U.S. at —, 112 S.Ct. at 998 (citing *Whitley,* 475 U.S. at 320, 106 S.Ct. at 1084).[8] In *Whit-*

ley, in the context of prison disturbances, the Court held that "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1084–85 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub. nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).[9]

When prison officials are faced with a riot or lesser disruption, they must act quickly and decisively to maintain or restore discipline. *Hudson,* — U.S. at — – —, 112 S.Ct. at 998–99. The Supreme Court has recognized that "'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators' ... [who] 'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Whitley,* 475 U.S. at 321–22, 106 S.Ct. at 1085 (citations omitted); *see Campbell v. Grammer,* 889 F.2d 797, 801 (8th Cir.1989); *Rust v. Grammer,* 858 F.2d 411, 414 (8th Cir.1988); *see also Stenzel v. Ellis,* 916 F.2d 423 (8th Cir.1990) (court refused to second guess

---

8. For instance, in the context of an inmate's allegations that prison officials failed to attend to serious medical needs, the Court has held that a "deliberate indifference" standard is applicable. *Whitley,* 475 U.S. at 320, 106 S.Ct. at 1084 (citing *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291). This standard, which requires an inmate to show that prison officials were deliberately indifferent to a serious illness or injury, is appropriate in this context because "the State's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities." *Id.* Examples of such governmental responsibilities would be the safety of prison staff or other inmates. The *deliberate indifference* standard, however, is not adequate when "officials [are] confronted with a prison disturbance [and] must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Hudson,* — U.S. at —, 112 S.Ct. at 998. When confronted by an inmate disturbance, prison officials must often make

their decisions "in haste, under pressure, and frequently without the luxury of a second chance." *Whitley,* 475 U.S. at 320, 106 S.Ct. at 1084.

9. Justice Marshall, writing for the dissent, disagreed with the majority in respect to the appropriate standard applied to determine the unnecessary and wanton infliction of pain in a riot context. He agreed "that the threshold for establishing a constitutional violation under these circumstances is high." *Whitley,* 475 U.S. at 328, 106 S.Ct. at 1088–89 (Marshall, J., dissenting). He did not agree, however, with the lessening of constraints imposed on prison authorities by the Eighth Amendment in a riot situation. *Id.* Justice Marshall believed the higher standard requiring force to be used "maliciously and sadistically for the very purpose of causing harm" was not justified by precedent, and was inappropriate because it requires courts to "resolve an issue of fact that will often be disputed and properly left to the jury." *Id.*

prison officials' judgment given the "broad administrative and discretionary authority" accorded by the courts). This deference, however, "does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Whitley*, 475 U.S. at 322, 106 S.Ct. at 1085.

After the Court's decision in *Whitley*, the "unnecessary and wanton infliction of pain" standard established by the Court in the context of a riot situation was extended to other " 'routine' incidents involving the use of force to maintain or restore prison security and discipline." *Cowans v. Wyrick*, 862 F.2d 697 (8th Cir.1988) (McMillian, J., concurring) (citing *Ort v. White*, 813 F.2d 318, 323–25 (11th Cir.1987) (citing cases)); *see also Hudson*, —— U.S. at ——, 112 S.Ct. at 999 (citing cases); *see also Stenzel*, 916 F.2d at 427 (Eighth Circuit applied *Whitley* standard to incident where inmate was forcibly moved to isolation). *But see Wyatt v. Delaney*, 818 F.2d 21, 23 (8th Cir.1987) (held that fourth prong of *Whitley* test, whether force was applied maliciously and sadistically for the purpose of causing harm, was inapplicable in excessive physical force case which did not involve a prison disturbance or prison security measure).[10] In *Hudson*, the Supreme Court followed this trend, holding that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, —— U.S. at ——, 112 S.Ct. at 999.[11]

In determining whether the use of force by a correctional officer was wanton and unnecessary, the court must consider:

the need for force; the correlation between the need for force and the amount of force used; the extent of the injury; "the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them"; and any attempt to "temper the severity" of the response.

*Stenzel*, 916 F.2d at 427 (quoting *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085); *see also Hudson*, —— U.S. at ——, 112 S.Ct. at 999.

The extent of injury suffered by an inmate is one relevant factor to an Eighth Amendment injury, but not a controlling factor. *See Hudson*, —— U.S. at ——, 112 S.Ct. at 999. An unnecessary and wanton infliction of pain may be found in the absence of a serious injury. *Id.* "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.... This is true whether or not significant injury is evident." *Id.* at ——, 112 S.Ct. at 1000.

Based upon the trial testimony and the total lack of corroborating evidence, this court rejects Risdal's claim that he was physically assaulted by Defendant Martin at the shower cell. Risdal has simply failed to carry his burden of proof regarding the alleged excessive physical force in the shower cell. Finding that Defendant Martin did not engage in assaultive behavior toward Risdal at the shower, the court must further conclude Risdal has failed to establish that Defendant Martin used such force against him that would violate the Eighth Amendment's proscription against cruel and unusual punishment.

**10.** This aspect of the Eighth Circuit's decision in *Wyatt* was clearly overruled by the Supreme Court's holding in *Hudson* that the *Whitley* test was to be applied in all excessive force cases. See *Hudson*, —— U.S. at ——, 112 S.Ct. at 999.

**11.** The majority viewed the malicious and sadistic standard as necessary to show that an unnecessary and wanton infliction of pain was exerted by prison officials in any excessive force

situation. *Hudson*, —— U.S. at ——, 112 S.Ct. at 999. Justice Stevens, however, in a concurring opinion, believed the malicious and sadistic standard was a separate and higher standard than the unnecessary and wanton infliction of pain standard. *Id.* at ——, 112 S.Ct. at 1002. He believed it was wrong for the majority to apply this higher standard to cases where no prison disturbance existed. *Id.*

■ Having found Risdal was not assaulted at the shower, the court need not tarry with the remaining claims that Risdal was taunted and jostled by Defendants while being returned to his cell. Even if the court were to accept these claims as true, the alleged conduct was not so egregious as to give rise to a violation of the Eighth Amendment's proscription of cruel and unusual punishment. Even as alleged by Risdal, the officers' use of force was minimal, caused no physical injury, and was not the type to be physically injurious or painful. In determining whether a constitutional deprivation has occurred, "a court must look to the extent of the pain inflicted." *Cowans*, 862 F.2d at 700 (citing *Johnson v. Glick*, 481 F.2d at 1033). The absence of any evidence to support Risdal's claim that the amount of force used by the officers was excessive, coupled with the total lack of injuries, compels the court to conclude that the record completely fails to support any "inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322, 106 S.Ct. at 1085. Unlike the situation in *Hudson*, where the inmate was subjected to an unprovoked physical assault resulting in bodily injuries, Risdal suffered no physical injury.

■ *De minimis* applications of force are excluded from the Eighth Amendment's cruel and unusual punishment calculation. *Hudson*, —— U.S. at ——, 112 S.Ct. at 1000. "That is not to say[, however,] that every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.; see Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even it if may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights"). "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided

that the use of force is not of a sort " 'repugnant to the conscience of mankind.' " " *Hudson*, —— U.S. at ——, 112 S.Ct. at 1000 (quoting *Whitley*, 475 U.S. at 327, 106 S.Ct. at 1088) (quoting *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292). *See also Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992); *Glick*, 481 F.2d at 1033; *Candelaria v. Coughlin*, 787 F.Supp. 368, 374 (S.D.N.Y.1992). The same holds true of verbal taunts and harassment. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979) (law enforcement officer's idle threat to hang prisoner did not give rise to a § 1983 claim). *But cf. Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir.1986) (prisoner's allegations that guard drew pistol on him, uttered racial epithets, and threatened to kill inmate made out a valid. § 1983 claim). In *Black Spotted Horse v. Else*, 767 F.2d 516 (8th Cir.1985), the Eighth Circuit Court of Appeals found an allegation that a prison officer

> caused a relatively minor injury to appellant's leg, poked him in the back, and spoke in a belligerent tone fails to state a claim under the Eighth Amendment. The conduct claimed may amount to a battery, for which plaintiff would have an action under state law, but it is not a constitutional violation. The conduct charged is simply not sufficiently inhumane or barbarous as to amount to "cruel and unusual punishment."

*Id.* at 517 (citations omitted). Even if Risdal had carried his burden of proof and established that Defendants Martin and Schneider lobbed verbal taunts towards Risdal and shoved him in the direction of his cell, Risdal would not be entitled to relief pursuant to the cruel and unusual punishment clause of the Eighth Amendment. A *de minimis* use of force clearly fails to rise to the level of an Eighth Amendment violation.[12]

---

12. Several district court opinions buttress the court's conclusion that the correctional officers' conduct in this case must be considered *de minimis*. In *Candelaria*, 787 F.Supp. at 375, the district court found that an inmate's allegations that guard pressed his fist against the inmate's neck constituted *de minimis* force for Eighth Amendment purposes. Similarly, in *Stacks v.*

*Sheahan*, No. 91 C 2758, 1992 WL 233961, at *3 (N.D.Ill. Sept. 15, 1992), the court held that a correctional officer's single punch to an inmate's stomach constituted a *de minimis* use of force. The district court in *Brown v. Vaughn*, Civ. A No. 91–2198, 1992 WL 82310, at *2 (E.D.Pa. Apr. 14, 1992), held that a single incident of a guard punching, pushing, and spitting

For the reasons stated above, the court holds Risdal has failed to prove that Officer Martin's actions towards Risdal on December 13, 1989, violated the Eighth Amendment's prohibition against cruel and unusual punishment.

### ORDER

It is therefore the order and judgment of the court that judgment be entered for Defendants.

on inmate was not "repugnant to the conscience of mankind." Likewise, the court in *Fuller v. Bowers,* Civ. A No. 87–7316, 1989 WL 8078, at *1 (E.D.Pa. Jan. 31, 1989), held that guard's conduct in striking inmate in chest, while perhaps tortious, did not rise above the *de minimis* level.